---o---

RICHARD D. LANCASTER, ADM'R OF ESTATE OF THOMAS H. TOUHEY, Respondent, vs. THE WASHINGTON LIFE INSURANCE COMPANY OF NEW YORK CITY, Appellant.

1. *Practice, civil—Motion for new trial—Error, what considered by Supreme Court.*—Only those errors to which the attention of the lower court was called in the motion for new trial, will be reviewed by the Supreme Court.

2. *Administration—Granting of letters prima facie proof of death.*—In suit by an administrator on a policy of life insurance taken out by deceased, where defendant admits plaintiff's appointment, but merely denies its legality, and the proof shows annual settlements made by him, it will be presumed that letters were granted. And the granting of the letters is *prima facie* evidence of the death of the intestate. But such presumption is of the weakest and most inconclusive character, and the very slightest evidence will be sufficient to overcome it.

3. *Life insurance—Disappearance—Presumption as to fact and time of death.*—Where, when last heard from, one was in contact with some specific peril, this circumstance may raise a presumption of death without regard to the duration

| 62 | 121 |
| 35a | 203 |
| 62 | 121 |
| 110 | 113 |
| 62 | 121 |
| 129 | 94 |
| 62 | 121 |
| 71a | 501 |
| 62 | 121 |
| 79a | 601 |
| 62 | 121 |
| 82a | 358 |
| 62 | 121 |
| e101a³ | 554 |
| 101a³ | 555 |
| 62 | 121 |
| 96a⁴ | 12 |
| 96a⁴ | 13 |
| 96a⁴ | 19 |

of the absence. But other circumstances may create the same presumption, as where the circumstances of the disappearance are more consistent with the theory of death than that of a continuance of life, when considered with reference to those influences and motives which ordinarily govern men ; in either of which cases the jury may infer death at any time, within the seven years, such as may seem to them most probable.

4. *Life insurance—Disappearance on steamer—Case stated raising presumption of accidental drowning.*—In suit on a life insurance policy, it appeared that the assured who was an unmarried man of about forty years of age, took passage on a lake steamer bound for Buffalo ; that on the voyage he seemed to be sick and despondent; that while the vessel was in Lake Huron, he was seen in the evening on the guard, and leaning out through a "shutter" in the bulwark of the boat, which opened upon the water; that on landing at Buffalo, ineffectual search was made for him, but in his stateroom were found his coat, hat and valise; that the vessel stopped at way posts, but he was not seen to go ashore, and could not have landed unobserved. *Held,* that the testimony was amply sufficient to show that he was brought in contact with a specific peril, and to raise the presumption of his death by drowning; and that such state of facts also raised the presumption that his death was the result of accident.

## *Appeal from St. Louis Circuit Court.*

*J. E. Ralston,* for Appellant, cited Bliss Life Ins., 583 ; 3 McLean, 494 ; 46 Ill., 230 ; 26 Me., 370 ; 1 & note 6, T. R., 766 ; 11 N. H., 191 ; 18 Johns., 143 ; 4 Whart., 150, 171 ; 3 How. Pr., 218 ; 8 Cal., 62 ; 5 Hurlst. & Norm., 211 ; 17 C. B. 372; Stark. Ev., 818 ; 1 Greenl. Ev., § 41 ; 2 Esp., 364 ; 3 Esp., 63 ; 1 Russ., 301 ; 1 Phil. Ev. Cow. & H. notes 343–4 ; 2 Id., 76–7 ; 11 State Tr., 261.

*A. J. P. Garesche,* for Respondent, cited 36 Mo., 13 ; 56 Mo., 65 ; Bliss Life Ins.. 2d. Ed., pp. 326–7, §§ 204–5 ; Id., p. 328; 45 Mo., 87 ; 47 Mo., 443.

Hough, Judge, delivered the opinion of the court.

This was an action by the plaintiff as administrator of the estate of Thomas H. Touhey, who, it was alleged, died by drowning on the 20th day of September, 1869, to recover from the defendant the sum of twenty-five hundred dollars and interest, on a policy of insurance issued by the defendant on the life of said Touhey, on the 12th day of July, 1869. The plaintiff averred full compliance with all the conditions

of said policy by the intestate, and alleged that due notice and proof of death were furnished to the defendant on the 19th day of October, 1870.

It was averred in the petition that the plaintiff was duly appointed by the probate court of the county of St. Louis, administrator of the estate of Thomas H. Touhey, deceased. This allegation was thus denied : " Defendant for answer to the petition of plaintiff says, that it has no knowledge or information sufficient to form a belief as to whether the plaintiff was legally appointed administrator of the estate of Thomas H. Touhey."

The answer admitted the insurance of Touhey's life at the time, and for the amount stated, but denied the death of Touhey ; denied that he fulfilled the conditions of his policy, and denied the notice and proof of death as alleged by plaintiff.

It appeared from the testimony introduced by the plaintiff, that about the middle of September, 1869, Thomas H. Touhey, the assured, took passage at Chicago for Detroit, on the steamer Badger State, a lake propeller, plying between Chicago and Buffalo. He appeared to be sick and despondent when he went on board, and he remained in his stateroom during the first two days of the voyage and took his meals there. He was spoken of by some of the employees of the boat who observed him, as " the sick man," and he wore a large overcoat. Sometime, during the night in which the steamer reached Detroit, Touhey disappeared and has not since been heard from. The watchman who was on duty the night Touhey disappeared, saw him last just before supper, and when the vessel was near the foot of lake Huron, and before it had entered the St. Clair river. The steward of the boat last saw him about the same time and talked with him in the wash room ; he left there, he said, to go to the water closet, which was on the main deck. The engineer, during the same evening and before the boat entered the St. Clair river, while looking at the starboard aft gangway in the main deck, saw the insured standing aft of him, about twelve

or fifteen feet, leaning his head and shoulders out of a " shut-. ter," a small opening which looked out upon the water, and which was in the bulwarks running up from the main deck to the promenade deck. He observed him there some three or four minutes, and never saw him afterwards. It does not appear whether the engineer saw him leave this opening, or whether, when he ceased to observe him, he was still at the opening. The master of the vessel last saw him on the evening of his disappearance, soon after supper, aft on the promenade deck. This was about seven or half past seven o'clock. Whether this was after he was seen by the engineer, does not appear. About half past ten o'clock the same night, the boat landed at a wood dock on the Canada side of the St. Clair river, just below Sarnia, and remained there about one hour. The master was on deck during the whole of this time and did not see him get off and testified that he could not have gone ashore there without having been seen by him. The vessel reached Detroit about four o'clock in the morning, and Touhey was first missed from the vessel when the master, just before reaching Detroit, sent the steward to call up the passengers, who were destined for that place, so that they might be ready to go on shore, when the boat landed. The steward having rapped several times at the door of the room occupied by Touhey, without receiving any answer, and hearing no one stirring within, tried the door, and finding it unlocked, opened it ; seeing no one there, he reported the fact to the master. The steward, by the direction of the master, then searched the vessel, but could not find Touhey. The master himself went immediately to Touhey's stateroom and found an ordinary black valise on the floor, containing letters, business cards, some vials, one shirt and a collar, and several photographs of the insured. There was a coat and vest hanging on a hook in the room, and an umbrella standing in the corner. He then looked about the vessel for Touhey, but was unable to find him, and some five or ten minutes after landing at Detroit, he went on shore and stood at the gangway, but did not see Touhey go ashore, nor did he hear any-

Lancaster, Adm'r, v. Washington Life Ins. Co. of N. Y.

thing of him. Inquiry was made at Detroit, but no information could be had that he left the vessel at that place. The general opinion of those on board the vessel was, that he had either fallen overboard accidently, or had jumped overboard and was lost. The night on which he disappeared, was a calm one. The vessel encountered neither storm nor accident. Touhey was at the time of his disappearance unmarried, without family, about forty years of age, and the editor of the St. Louis Journal of Commerce, or St. Louis Commercial Bulletin. The letters of administration were not introduced in evidence. At the close of the plaintiff's case, defendant asked certain instructions which were in the nature of a demurrer to the evidence, which were refused by the court and the defendant excepted. It will not be necessary to review the action of the court on these instructions, as the same questions raised by them, except as to proof of loss, of which there was some evidence, arise on the instructions given and refused by the court after the testimony was all in. The only witness sworn by the defendant was Lancaster, the plaintiff in the cause. He testified that he was the administrator of the estate of Thomas H. Touhey; that the assets which came to his hands were sufficient to pay the debts of said Touhey; that he had made three annual settlements of his estate; that so far as he knew, Touhey had no relations in St. Louis.

The court gave the following instruction at the instance of the plaintiff: "If the jury believe from the evidence that proof of the death of the assured Thomas H. Touhey was furnished to defendant by plaintiff, and the jury believe from the evidence that said Thomas H. Touhey had died by drowning before said proof of death and the bringing of this suit, then they will assess the damages at the sum of twenty five hundred dollars and may further find interest to this date at the rate of six per cent. per annum from the date of the expiration of the sixty days after proof of loss furnished;" to the giving of which instruction the defendant at the time excepted.

The following instructions were given on behalf of the defendant:

6. "The court instructs the jury that the perils of navigation are general and not specific perils, and in order to find for the plaintiff in this case they must believe from the evidence that Thomas H. Touhey whose life was insured by defendant was a passenger on board the propeller Badger State on or about the evening of Sept. 20th, 1869; that said Touhey did not leave said boat either at the wood dock on the Canada shore of St. Clair river, or at Detroit, and that said Touhey on said date fell overboard from said boat and was thereby drowned."

8. "The court instructs the jury that, if they believe from the evidence of the plaintiff that said evidence is quite as consistent with the view that Thomas H. Touhey went ashore from the propeller either at the wood dock, on the Canada side of the St. Clair river, or at Detroit, as it is with the view that said Touhey accidentally fell overboard and was drowned, then the plaintiff cannot recover."

The following instructions were asked by the defendant and refused by the court:

5. "The court instructs the jury that an absent person, of whom no tidings have been received, is presumed in law to live for seven years from the time he was last known to be living, and that they are bound to presume that Thomas H. Touhey is still living, unless there are circumstances in evidence proving his death to the satisfaction of the jury."

7. "The court instructs the jury, that the evidence of death in this case was circumstantial only, and to entitle the plaintiff to recover in this action he must introduce evidence tending to show to the satisfaction of the jury that Thomas H. Touhey was, at some particular time since he became insured by the defendant, in contact with some particular peril calculated to shorten or destroy life."

To the refusal of the court to give the foregoing instructions numbered five and seven, the defendant at the time excepted. There was a verdict and judgment for the plaintiff,

Lancaster, Adm'r, v. Washington Life Ins. Co. of N. Y.

which judgment was affirmed at general term, and defendant has appealed to this court.

Objections were made and exceptions saved to the admission of some testimony introduced by the plaintiff; but the action of the court in giving and refusing instructions was the only error complained of which was brought to the attention of the court below in the motion for a new trial, and is consequently the only matter which can properly be reviewed in this court.

As will be seen by reference to that portion of the pleadings copied above, the defendant in its answer admits the appointment of the plaintiff as administrator of Touhey by the probate court of St. Louis county, but denies the legality of the appointment. The defendant also proved by the plaintiff that he was administrator of Touhey's estate, and had made three annual settlements. The admission contained in the pleadings and the testimony introduced by the defendant sufficiently establish the fact, we think, that letters of administration had been granted by the probate court of St. Louis county to the plaintiff. The grant of letters being established, we must presume that they conformed to the requirements of the statute, and recited both the death of Touhey and his residence in St. Louis county. This is sufficient to throw the burden of proof on the defendant to show that the letters to the plaintiff were illegally issued.

Letters of administration, according to all American authorities we have examined, are *prima facie* evidence of the death of the person on whose estate they are issued. (Newman vs. Jenkins, 10 Pick., 515 ; Tisdale vs. Com. Mut. Life Ins. Co., 26 Ia., 170; Jaffers vs. Radcliff, 10 N. H., 242; Cunningham vs. Smith's Adm'rx, 70 Penn. St., 450; 1 Greenl. Ev., § 550 ; McKim vs. Riddle, 2 Dall., 100 ; French vs. Frazier's Adm'r, 7 J. J. Marsh, 432 ; Bliss Life Ins., 2 ed., 327; Munro vs. Merchant, 26 Barb., 397.) We are aware that in some cases in England a different rule is maintained. The *prima facie* case made by the letters of administration is, however, generally conceded by the authorities to be of

the weakest and most inconclusive character, and but slight evidence that the insured was still living when the letters were granted, will be sufficient to overthrow the presumption of death arising from the grant of letters.

No testimony was offered by the defendant to rebut the *prima facie* case made for the plaintiff, and the only evidence of the circumstances attending the disappearance of the insured was offered by the plaintiff. It remains, then, to be seen whether these circumstances are sufficient to rebut the presumption of death made by the grant of administration, and to bring into operation that other presumption of law, that a person who has disappeared and has not been heard from shall be presumed to continue to live for the period of seven years since he was last known to be alive, unless within that period it shall be shown, that when last heard from he was in contact with some specific peril likely to produce death, or that he disappeared under circumstances inconsistent with a continuation of life, when considered with reference to those influences and motives which ordinarily control and direct the conduct of rational beings; in either of which cases the jury are at liberty to infer that death occurred at such time within seven years as from the testimony may seem most probable. In determining this question it is immaterial whether the testimony showing the circumstances attending the disappearance of the insured, are produced in evidence by the plaintiff or defendant.

The rule contended for by the defendant is, that where the evidence of death is circumstantial only, the jury are not warranted in inferring death, unless the evidence shows that the party whose death is sought to be established, was, when last heard from, in contact with some particular peril calculated to shorten or destroy life. The rule as thus stated, while it has the support of some distinguished names, and is undoubtedly correct as far as it goes, is much more restricted than that laid down in the case of Tisdale vs. The Com. Mut. Life Ins. Co. (26 Ia., 170) and which has received the approval of this court in the case of Hancock, Adm'r of Morris,

vs. The American Life Ins. Co., *ante*, p. 26. Under the rule adopted by this court, circumstances other than those of particular peril calculated to shorten or destroy life, may be sufficient to raise a presumption of the death of an absent person from whom no tidings have been received, without regard to the duration of such absence.

The ordinary perils of navigation are undoubtedly general and not special perils, and there is no ground for supposing that the sickness of the insured of itself terminated his life, as it is evident from the testimony that he did not die upon the boat, and nothing appears from which it may be inferred that he left the boat and went on shore. The testimony points, we think, to the single conclusion that the insured disappeared from the vessel while it was under way in Lake Huron, and was drowned, either by accident or design. The fact that his coat and vest were found hanging upon a hook in his room would seem to indicate that after he had retired, or had at least partially prepared to retire, he had gone forth from his room and had either fallen or thrown himself into the lake. The instruction numbered six, given at the instance of the defendant, in effect, told the jury they could not find for the plaintiff, unless they found the drowning to have been accidental. The testimony preponderates in favor of the conclusion that the insured was, on a night in September cool enough to require an overcoat, subjected, in a weak condition of body, and a dejected state of mind, to the perils of a struggle with the waters of Lake Huron, and in the utter absence of all testimony showing how he got into the lake, the presumption is that it was the result of accident. (Mallory vs. Traveler's Ins. Co., 47 N. Y., 52.) The testimony in this case is amply sufficient to raise a presumption of death; and it is manifest that the *prima facie* case made by the letters of administration is corroborated and strengthened, rather than overthrown, by the testimony as to the circumstances attending the disappearance of the insured.

The instruction numbered five, asked by the defendant, ignored the *prima facie* case made by the grant of adminis-

9—VOL. LXII.

tration, and was properly refused. Defendant's instruction numbered seven also ignored the *prima facie* case made for the plaintiff by the administration granted, and was properly refused for that reason, and also because it did not conform to the law in reference to the character of evidence necessary to raise a presumption of death, though in the case at bar the testimony tended to show contact with a specific peril.

Instructions numbered six and eight, given for the defendant, presents its case very fairly to the jury on the testimony adduced, and we will not disturb the finding.

The instruction given for the plaintiff is abstractly objectionable in failing to confine the inquiry of the jury as to death to the period for which the insured had paid the premium, but there is no pretense that he died after that time, and this error is not material under the circumstances of this case.

The judgment will be affirmed; all the judges concur, except Judge Vories, who is absent.