HUCKSHOLD v. THE ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY, *Appellant*.

1. **Practice**: DEMURRER. The facts in this case examined and defendant's demurrer to plaintiff's evidence held to have been properly overruled.

2. **Railroads**: NEGLIGENCE: PRIMA FACIE CASE: STATUTE: BURDEN OF PROOF. Under Revised Statutes, section 806, as amended by the act of 1881 (Acts, p. 79), a person suing for damages sustained at the crossing by a railroad of a public road or street, makes out a *prima facie* case of negligence when he shows that neither the bell was rung nor whistle sounded, as required by the statute, and the burden of rebutting it is cast upon the corporation.

3. ———: CONTRIBUTORY NEGLIGENCE: BURDEN OF PROOF. Where contributory negligence is pleaded as a defence in an action of negligence, the burden of proving it to the satisfaction of the jury rests on the defendant.

4. ———: ———: CROSSING. A boy seventeen years of age, returning to his home from his labor, driving a horse and cart on a public street, who stops several minutes within ten feet of where a railroad crosses such street, and at a place where the view of the track is obstructed by box cars left thereon, is not guilty of such contributory negligence as will preclude a recovery for his death, caused by the failure to ring the bell and sound the whistle, because

of his failure to get down from his cart and lead his horse over the crossing, or to leave his horse and go in advance to the track and look up and down it for an approaching train.

**5.   Practice : REMARKS OF COUNSEL : DISCRETION OF TRIAL COURT.** The trial judge who hears the arguments of opposing counsel is in a better position than the appellate court to determine whether he should interfere because of improper remarks, it being a matter within his sound discretion, and it is only where such discretion has clearly been abused that the Supreme Court will reverse the judgment for such cause.

*Appeal from Iron Circuit Court.*—HON. JAMES D. FOX, Judge.

AFFIRMED.

*Geo. H. Benton* for appellant.

(1)   The court erred in refusing to permit the introduction of the testimony of Fred. Huber, taken before the coroner. *Hays v. Walker*, 2 Mo. 222 ; *Peck v. Richey*, 66 Mo. 114 ; *Pruitt v. Martin*, 59 Mo. 325 ; *Spoonemore v. Cables*, 66 Mo. 579.·   (2) The court erred in giving the instructions requested by plaintiff, and especially in giving the fourth instruction, without the qualification that said contributory negligence may be disclosed by the testimony for the plaintiff. *Stepp v. Railroad*, 85 Mo. 230.   (3) The demurrer to the evidence ought to have been given by the court at the close of the plaintiff's case, and also at the close of the whole case. *Powell v. Railroad*, 76 Mo. 82 ; *Harlem v. Railroad*, 64 Mo. 480 ; *Purl v. Railroad*, 72 Mo. 168.   (4) Defendant's refused instructions were correct law, applicable to the facts in the case, and. should have been given. *Henze v. Railroad*, 71 Mo. 836 ; *Railroad v. Beale*, 73 Pa. St. 503 ; *Besergel v. Railroad*, 34 N. Y. 628 ; *Morris & Essex v. Haslan*, 33 N. J. 149 ; *Benton v. Railroad*, 42 Iowa, 192 ; *Dodge v. Railroad*, 34 Iowa, 280 ; *Fleming v. Railroad*, 49 Cal. 253 ; *Hixson v. Railroad*, 80 Mo. 335 ; *Johnson v. Railroad*, 77 Mo. 549 ; *Railroad*

*v. Feller*, 84 Pa. St. 504. (5) The closing argument of plaintiff's counsel was calculated to prejudice the minds of the jury against the defendant, and ought not to have been permitted to be made by the court. *State v. Lee*, 66 Mo. 165. (6) The court erred in overruling defendant's motion for a new trial. Authorities cited above ; *Hoppe v. Railroad*, 61 Wis. 357 ; *Railroad v. Johnson*, 103 Ill. 512 ; *Coal Co. v. Conlan*, 6 Am. & Eng. R. R. Cases, 243 ; *Railroad v. Stewart*, 83 Ind. 503.

*O. G. Hess* and *Klein & Fisse* for respondent.

(1) (*a*) There was no error in the refusal of the court to allow the testimony of Fred. Huber, taken before the coroner, to be read as independent evidence at the trial of this case. (*b*) Besides, the bill of exceptions does not state the evidence which was offered and excluded, in the connection where it was offered and excluded ; and where the record fails to show the evidence so excluded, it is a conclusive presumption that the ruling of the trial court was correct. *Wilson v. Board of Education*, 63 Mo. 141. (*c*) The objection to the evidence is not preserved in the record, *non constat*, but it shows that the objections may have been perfectly good for a number of reasons, of which this court cannot now judge. (2) [*a*] It was not error to refuse to sustain defendant's demurrer to the evidence at the close of plaintiff's case. Session Acts, 1881, p. 79. (*b*) There was a conflict in the testimony. It is only when it is apparent at first blush that the finding of the jury in favor of the plaintiff would be wholly unsupported by the facts that an instruction for a non-suit is proper. *Drain v. Railroad*, 86 Mo. 574 ; *Meyer v. Railroad*, 40 Mo. 151 ; *Callahan v. Warne*, 40 Mo. 137 ; *Norton v. Ittner*, 56 Mo. 351 ; *Stoddard v. Railroad*, 65 Mo. 514 ; *Buesching v. Gas Light Co.*, 73 Mo. 219 ; *Mauerman v. Siemerts*, 71 Mo. 101 ; *Nagel v. Railroad*, 75 Mo. 653 ; *Stepp v.*

*Railroad*, 85 Mo. 229. (3) There was no error in granting plaintiff's fourth instruction without the qualification that contributory negligence might be disclosed by the evidence offered by the plaintiff. The rule laid down in the case cited in appellant's brief (*Stepp v. Railroad*, 85 Mo. 229, 235-6), does not support the proposition contended for by appellant. (*a*) The presumption of law is, that the deceased was in the exercise of due care at the time of the accident. *Buesching v. St. Louis Gas Light Co.*, 73 Mo. 233 ; *Flynn v. Railroad*, 78 Mo. 212. (*b*) It devolves upon those who allege the default of the company to make proof of its negligence, and that the injury was occasioned in consequence of such negligence ; and, on the other hand, when the traveler's fault, if any there was, is not disclosed by his own testimony, and the company is shown to have been in default, it devolves upon the defendant to show the want of proper care on the part of the person injured, and that, by the observance of such precautions as are required by law, he could have seen or heard the train. *Johnson v. Railroad*, 77 Mo. 547 ; *Stepp v. Railroad Co.*, 85 Mo. 229, 236 ; *Buesching v. Gas Light Co.*, 73 Mo. 229 ; *Sweigardt v. Railroad*, 75 Mo. 480 ; *Thompson v. Railroad*, 51 Mo. 190 ; *Lloyd v. Railroad*, 53 Mo. 509. (*c*) There was evidence here that the tender and locomotive running backward, was without any light to indicate its approach ; and that no signal of any kind was given to warn the traveler of such approach, and that it was running at an illegal rate of speed. This was such an omission to perform the duties imposed upon the defendant by law as constituted negligence on defendant's part. Sess. Acts, 1881, p. 79 ; Ordinances of St. Louis ; *Stepp v. Railroad*, 85 Mo. 229 ; *Halferty v. Railroad*, 82 Mo. 90 ; *Drain v. Railroad*, 86 Mo. 574. (4) There was no error in refusing defendant's instructions numbered one, four, seven, eight and nine. (5) There was nothing in

the closing argument of plaintiff's counsel demanding a reversal. Where the court interrupts counsel, upon objection being made by opposing counsel, and requires him to confine his argument to the evidence in the case, there is no ground for reversal. *State v. Lee*, 66 Mo. 165 ; 21 Cent. Law Jour. 447 ; *State v. Hamilton*, 55 Mo. 522 ; *Lloyd v. Railroad*, 53 Mo. 513 ; *Bradshaw v. State*, 22 N. W. Rep. 363 ; *McClean v. State*, 24 N. W. Rep. 724 ; *Strauss v. Railroad*, 86 Mo. 421. (6) The motion for new trial was properly overruled.

NORTON, C. J. — This suit was instituted by plaintiff to recover damages for the alleged killing of his minor son, on the crossing of Catalan street, in the city of St. Louis, by the negligence of defendant in running its locomotive at an unlawful rate of speed ; in failing to ring the bell of the locomotive at a distance of at least eighty rods from the place where the railroad crosses Catalan street, and keep the same ringing until the locomotive had crossed the street ; in running the engine backwards, in the dark, so that its approach could not be seen, without any headlight or other light to signal or indicate its approach. The answer was a general denial, and set up contributory negligence on the part of the defendant.

On the trial plaintiff obtained judgment, from which defendant has appealed, and assigns for error, among others, the action of the court in refusing to sustain a demurrer to the evidence, which necessitates an examination of it. On the part of plaintiff the evidence tends to show that plaintiff's son, a youth about seventeen years old, was, on the eighth of December, 1882, at work on a night shift at the Vulcan Iron Works, in Carondelet, in the city of St. Louis ; that, between five and six o'clock in the morning, he left the works for his home, driving a horse, hitched to a new and strong cart with heavy iron axle, and heavy wide tire ; that he left in

company with John Senn, a fellow workman, who was also driving a cart; that he stopped at a well, about twenty-five feet from the track, and southeast of Catalan street crossing, to water his horse, and then drove on, and stopped his horse and cart ten minutes, and about ten feet from the track at the north end of two box cars, standing south of Catalan street. Senn testified that deceased stopped at that place to wait for him; that, at the place where deceased stopped his horse, his view of the track south of Catalan street was obstructed by two box cars, standing south of said street, and east of the railroad track; that, when Senn finished watering his horse, he drove up to deceased, who drove on from where he had stopped, and the cart was struck by defendant's engine at the crossing on Catalan street, breaking the wheel all to pieces, axletree and shafts, and killing the plaintiff's son instantly. Senn testified that the bell of the engine was not rung till after the accident; that the engine was running backwards in a northerly direction; that it was a dark morning; that there was no light on the rear end of the tender; that the headlight was on the south end of the engine, which was south of Catalan street crossing, and ould not be seen; that the engine was running at twenty-five or thirty miles an hour; that he did not see or hear the approach of the engine till about the time the collision occurred, when he hallooed to deceased, and the cart was struck and deceased was killed.

Witness Huber, who was also a laborer at the Vulcan Iron Works, testified that he left the works at twenty minutes before six o'clock and went on the north side of Catalan street, as far as the railroad track and saw a cart standing a few feet east of the railroad track; that he saw another cart come up to this one; that he was walking up from the track northwest and looked round on the track, thinking an engine might come; the express always came about that time; that when he

looked down he did not see anything coming, and all at once heard a rattle behind, and saw the cart lying there and the boy killed; that after the collision the engine ran a block or about three hundred feet northward before it stopped; that the speed of the engine was about thirty miles an hour; that he saw no light and heard no bell ring till after the engine passed him.

The plaintiff also put in evidence an ordinance of the city of St. Louis, making it unlawful for any locomotive, propelled by steam power, to run at a rate of speed exceeding six miles an hour within the limits of the city, and requiring the bell of the engine to be constantly sounded within the city limits.

On the part of defendant, both the conductor and engineer testified that the engine was running at only five or six miles an hour, and that the bell of the engine was constantly sounded; that a red light was placed on the north end of the tender, and that the headlight of the engine was burning; that the morning was dark, and the boy and cart were not seen till after the accident. The evidence also tended to show that red lights were usually put at the rear end of a train to indicate to a following train that there was a receding train ahead of it. The engineer also testified that the fireman had left the employ of the company on that division, and that he did not know where he was; that at the time of the accident the fireman was engaged in putting coal in the engine. There was also evidence tending to show that twelve or fifteen hundred persons were in the employ of the Vulcan Works, and that the crossing was extensively used by them in going and returning from their work, as well as by cartmen and teamsters, and that this was known to those in charge of the train. On this state of the evidence we have no hesitation in saying that the demurrer to it was properly overruled.

It is next insisted that the court erred in giving improper and refusing proper instructions. On behalf of

plaintiff the court instructed the jury to the effect that, if they believed from the evidence that defendant's son was killed within the limits of the city of St. Louis, at a point where defendant's track crosses Catalan street, without fault on his part, and by reason of defendant's servants running the locomotive at a rate of speed exceeding six miles an hour, or their failure to ring the bell of the engine, they would find for plaintiff.   They were also instructed that one of the defences set up by defendant was, that plaintiff's son, at the time of the accident, was guilty of negligence, which directly contributed to his death, and that the burden of proving such negligence to the satisfaction of the jury rested on defendant.   As to the last declaration, see *Thompson v. Railroad,* 51 Mo. 190 ; *Lloyd v. Railroad,* 53 Mo. 509.   These instructions are unexceptional, in view of the former decisions of this court ; the first one especially so, in view of the acts of 1881, p. 79, amendatory of section 806, which has not, so far as I am aware, been heretofore called to our attention, or construed by us.   By said section 806, the duty of ringing the bell or sounding the whistle of the locomotive, at the distance of eighty rods from the place where a railroad crosses a public traveled road or street, is imposed on railroad corporations, and it, among other things, provides, "that said corporation shall be liable for all damages which shall be sustained by any person by reason of such neglect."   Under this section it was held by this court in several cases that, in a suit for damages sustained at a railroad crossing of a road or street, that, although the party suing established the fact that neither the bell of the engine was rung, nor whistle sounded, as required by the statute, that such evidence did not make out a *prima facie* case, and that it was the duty of the court to instruct the jury that under such evidence he could not recover.   Such was the state of the law when, in 1881 ( Acts, 1881, p. 79 ), the General Assembly amended

said section so as to make the last sentence read as follows: "And said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing *when* such bell shall not be rung, or such whistle sounded, as required by this section; provided, however, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury." We think it clear that it was intended by this amendment to establish the rule that a *prima facie* case is made when a person, suing for damages sustained at the crossing by a railroad of a public road or street, shows that neither the bell of the engine was rung nor whistle sounded, as required by the statute; that he makes out a *prima facie* case, and that the burden of rebutting it is cast upon the corporation. If not intended to accomplish this, we are at a loss to give it any meaning at all. On the part of defendant the court gave several instructions as to contributory negligence, in which the jury were in substance told that if deceased approached the crossing without paying any attention to his own safety, but trusted to the obligation of the company to warn him of an approaching engine, and was killed by reason of his failure to so pay attention, or if deceased could have avoided the collision by stopping his horse and cart to look and listen for an approaching engine or train, up and down the track, before attempting to drive across, and failed to do so, they should find for defendant. The duty of deceased to exercise care, before attempting to make the crossing, and the non-liability of defendant, if, by his failure to exercise such caution, he was killed, although it might also have been negligent, was emphasized by the court in four or five instructions.

But the chief ground of error relied upon as to the instructions is the refusal of the court to give certain instructions asked by defendant to the effect that if de-

ceased could have avoided the collision by getting down from his cart and leading his horse across the track, then the verdict must be for defendant; or, that if the conditions were unfavorable to deceased hearing the approach of the engine, or there were obstructions on the side of the track which obscured his view of the track, it was the duty of deceased to get down from his cart and go in advance of his team until he could see that the track was clear before going on it, and that his failure to do so under the circumstances of the case was such contributory negligence as to prevent a recovery. We are unwilling to extend the degree of care and caution to be exercised by the traveler on a public highway to the extent of saying, as a matter of law, that a youth, seventeen years of age, returning to his home from his labor, driving a horse and cart on a public street, although he stops his horse for some minutes in ten feet of where a railroad crosses said street, and at a place where the view is obstructed by box cars left on the side of the track, presumably plaintiff is guilty of such contributory negligence as will deny a recovery, unless he either gets down and leads his horse and cart over the crossing, or, unless he leaves his horse and cart and goes in advance to the track, and looks up and down the same for an approaching engine or train. If, in this instance, he had gone to the track, looked south and seen a red light on the rear end of the tender, it would have notified him, not that it was coming towards him, but going from him. Or if he had gone in advance of his team, and looked up and down the track and saw nothing, when he got back to his team to drive over he would have been in the same fix as when he started. The instructions were properly refused under the rulings of this court in the cases of *Johnson v. Railroad*, 77 Mo. 546; *Petty v. Railroad*, 88 Mo. 306; *Henze v. Railroad*, 71 Mo. 636. In the case last cited it is said: "If Henze had used the precaution which common prudence

dictates it is not likely that the calamity would have occurred. If he had stopped to look and listen when near the track, and could neither see nor hear the approaching train on account of the cut or other obstructions, and no signal was given from the train, he would have been justifiable in attempting to cross, and no negligence could have been imputable to him."

It is also insisted that the trial court should have granted a new trial because of certain remarks of plaintiff's counsel in his closing speech to the jury. In commenting on the absence of the fireman, whose duty it was to ring the bell, he said, "that if the testimony of the engineer and conductor was true, why did they not produce the fireman; that the engineer and conductor could do their master's bidding, but because the fireman asserted his manhood, and that he would testify for the truth and not perjure himself, and tell the story as it was." Upon objection being made the court directed the attorney "to confine himself to the evidence in the case." In the further course of his argument counsel said: "Now, further, he (the engineer) says there was the bell ringing all the time. Now, gentlemen of the jury, I ask you again, in the name of common sense, if that bell was rung, why don't they produce that fireman to-day to substantiate their testimony. *And I have a right* to say that, in the absence of that fireman, you have a right to draw the conclusion that he told the officers of this company at the time that he would swear to no such thing, and, therefore, they did not want him." Objection being made to this line of remarks the court, addressing the counsel, said: "I don't think that is part of the evidence, and I don't think you have the right to make any such conclusion from the absence of the fireman."

The counsel further said: "In a case of this kind the law fixed the penalty at five thousand dollars. What in the name of common sense do railroad companies care

for five -thousand dollars? If they want to make issue, what in the name of common sense do they care for that? And yet they have the heart to come here and say that you ought to find a verdict for the defendant, and let the *railroad companies kill all the men and boys they please.*" To this, objection was made, but the court declined to interfere. In view of the fact in evidence that it was the duty of the fireman to ring the bell, and that, at the time of the accident, he was engaged in putting coal in the engine, and the fact of his absence, the engineer having testified that he quit the service on that division, and that he, the engineer, did not know where he was ; and in view of a well recognized principle, that, when a party fails to introduce evidence of a disputed fact which it is in his power to produce, *unfavorable* inferences may be drawn against him by reason of such failure ; and in view of the fact that the engineer not knowing where the fireman was, did not establish the fact that defendant did not know, the trial judge, in what he said when objection was made, went far enough. The trial judge, who had heard the speeches of opposing counsel, and knew what, if anything, was said to provoke the last remarks of coun. sel in his closing speech, was in a better position than we are to determine whether he should or not interfere, and as to when, how, and to what extent a trial judge may interfere in any case, must depend upon the exercise of a sound discretion, especially so in view of the fact, within the knowledge of every trial judge, as well as those who practice before him, that he is closely scrutinized by the jury, to discover if possible how he inclines to view the evidence, and it is only when it clearly appears that this discretion has been abused that we will interfere.

Judgment affirmed, in which all concur.