[No. 5684. Decided December 27, 1905.]

AMELIA STARR, *Appellant,* v. AETNA LIFE INSURANCE COMPANY, *Respondent.*[1]

INSURANCE — ACCIDENT POLICY—CONSTRUCTION—EXCEPTIONS—BURDEN OF PROOF. Under the rule that exceptions from liability in accident insurance policies must be construed strongly against the insurance company, the burden of proof is upon the insurance company to establish the fact that an accident happened by reason of some act that was made an exception to the risk, in order to avoid liability, where a death from violent injuries has been shown.

SAME—POLICY—CONSTRUCTION. Under a provision in a policy of accident insurance exempting the company from liability in case of the death of the insured "being on any railroad bridge or right of way," recovery may be had where the insured, at the side of the tracks, fell or was drawn under the train; since "right of way" must be construed to mean "on the track," and not the full width of the land owned by the company.

SAME—EVIDENCE—RES GESTAE. In an action upon an accident insurance policy, statements made by the deceased explaining how the accident happened and showing that it was accidental, are admissible as part of the *res gestae*, when made to the physician, about

1Reported in 83 Pac. 113.

an hour after the accident, in the absence of his associates and when so mangled that an amputation of both arms was necessary and death resulted within thirty-six hours.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered March 6, 1905, in favor of the defendant, dismissing, at the close of plaintiff's testimony, an action on a policy of accident insurance.   Reversed.

*James A. Williams* and *Denton M. Crow,* for appellant, to the point that it was for the jury to determine whether the deceased was on the "right of way" within the exceptions of the policy, cited: *Standard etc. Ins. Co. v. Langston,* 60 Ark. 381, 30 S. W. 427; *Equitable etc. Ins. Co. v. Osborn,* 90 Ala. 201, 9 South. 869, 13 L. R. A. 267; *Meadows v. Pacific etc. Ins. Co.,* 129 Mo. 76, 31 S. W. 578, 50 Am. St. 427; *Standard Life etc. Ins. Co. v. Thornton,* 100 Fed. 582, 49 L. R. A. 116; *De Loy v. Travelers' Ins. Co.,* 171 Pa. St. 1, 32 Atl. 1108, 50 Am. St. 787; *Traders etc. Acc. Co. v. Wagley,* 74 Fed. 457; *Matthes v. Imperial Accident Ass'n,* 110 Iowa 222, 81 N. W. 484; *Hill v. Central Accident Ins. Co.* (Pa. St.), 59 Atl. 262; *Duncan v. Preferred etc. Acc. Ass'n,* 13 N. Y. Supp. 620; *Dougherty v. Pacific etc. Ins. Co.,* 154 Pa. St. 385, 25 Atl. 739.   The statements of the deceased were part of the *res gestae.*   1 Cyc. 295; *Insurance Co. v. Mosley,* 75 U. S. 397, 19 L. Ed. 437; *Leahey v. Cass Avenue etc. R. Co.,* 97 Mo. 165, 10 S. W. 58, 10 Am. St. 300; *International etc. R. Co. v. Smith* (Tex.), 14 S. W. 642; *Delaware etc. R. Co. v. Ashley,* 67 Fed. 209; *Waldele v. New York etc. R. Co.,* 29 Hun. 35; *Augusta Factory v. Barnes,* 72 Ga. 217, 53 Am. Rep. 838.

*Post, Avery & Higgins,* for respondent, contended, among other things, that "right of way" as used in the policy did not mean "road bed."   *Meadows v. Pacific etc. Ins. Co.,* 129 Mo. 76, 31 S. W. 578, 50 Am. St. 427; *Day, Williams & Co. v. Railroad Co.,* 41 Ohio St. 392; *Chicago etc. R. Co. v.*

*People ex rel. Denison*, 98 Ill. 350; *Chicago etc. R. Co. v. Cass County*, 8 N. D. 18, 76 N. W. 239; *Central Trust Co. v. Wabash etc. R. Co.*, 29 Fed. 546; *Keener v. Union Pac. R. Co.*, 31 Fed. 126. There is no insurance where the person is at a place excluded by the policy. *Sohier v. Norwich Fire Ins. Co.*, 11 Allen 336; *Weinschenk v. Aetna Life Ins. Co.*, 183 Mass. 312, 67 N. E. 242. The burden was upon the plaintiff to negative the existence of this condition. *American Accident Co. v. Carson*, 99 Ky. 441, 36 S. W. 169, 59 Am. St. 473, 34 L. R. A. 301; *Lilly v. Preferred Accident Ins. Co.*, 41 Misc. Rep. 585, 83 N. Y. Supp. 585. The statements of the deceased were no part of the *res gestae*. *Waldele v. New York etc. R. Co.*, 95 N. Y. 274, 47 Am. Rep. 41; *Savannah etc. R. Co. v. Holland*, 82 Ga. 257, 14 Am. St. 158; 2 Jones, Evidence, § 348.

DUNBAR, J.—The appellant is the beneficiary named in a certain accident insurance policy issued to her husband, Martin Luther Starr. This action was brought by appellant, as such beneficiary, to recover the principal sum of $5,000, by reason of the loss of the life of said Martin Luther Starr, as the proximate result of external, violent, and accidental means. Some of the facts were stipulated between appellant and respondent, and appear as follows: On December 6, 1903, the insured, Martin Luther Starr, was at Hatton, Adams county, Washington. At about four o'clock in the morning of said day, said Starr, with some companions, started from the hotel for the Northern Pacific railway depot. The train for Spokane was then due, and came in shortly after said Starr and his companions arrived at the depot. It was then still dark.

Starr left his companions before the arrival of the train, and when the train arrived, he could not be found by his companions, who made some search for him. Shortly after the train pulled out for Spokane, some men at the depot heard Starr calling from a direction opposite to that in which

the train had gone, and in a few moments said Starr came to the depot from the direction opposite to that the train had gone—that is, from down the track toward Tacoma—with both arms hanging limp and in a crushed condition. Within two days after said Starr was discovered as aforesaid, he died from the effect of such injuries. Before his death, his arms were amputated for the purpose of saving his life. Said Starr had not received said injuries before leaving his companions at the depot. The evidence shows that prompt notice was given the respondent of said injuries and the subsequent death of the insured, and that, within the time limited by the policy, proper proofs of death were furnished. Respondent denied any liability under the policy of insurance, and thereafter this action was brought.

The complaint set up the death by accident, the provisions of the policy, etc., and all the allegations usual in such a case. The answer admitted the issuance of the policy by the defendant, but alleged that there were other conditions and requirements in the policy, not mentioned in the complaint, wherein it was provided that the failure to comply with such provisions would work a forfeiture and loss of all rights under the policy; affirmatively alleged that the policy of insurance, described in the complaint and sued upon, contained the following provision:

"This insurance does not cover disappearance nor suicide, sane or insane, nor the result, fatal or otherwise, of injuries of which there is no visible mark upon the body (except as hereinbefore provided); nor in event of accident or death, loss of limb or sight, or disability resulting wholly or partly, directly or indirectly, from bodily or mental infirmity, or disease in any form, nor from sleep-walking, medical or surgical treatment, war or violating the law; nor for injuries intentionally inflicted upon the insured by himself; nor does it cover (except as incident to the occupation of railway employees) entering or trying to enter or leave a moving conveyance using steam or electricity as a motive power (except cable and electric street cars) being in any place in or on any such conveyance which has not been provided for

the occupation of passengers during transit, or being on any railroad bridge or right of way except at established crossings of such roads with public highways."

The answer further averred that the insured was, at the time of said injury, trying to board a moving railroad train at a place other than a station, or trying to commit suicide, and at said time was on, and said injury occurred on, the right of way of the Northern Pacific Railway Company's railroad, and at a place that was not then an established, or any, crossing of such railroad with a public highway; that said railroad right of way at the place where said injury occurred was at the time four hundred feet wide, and that the said railway company's railway tracks ran approximately in the center of said right of way. The reply admitted the exceptions specified in the answer in the affirmative defense, but denied the other allegations. At the conclusion of the plaintiff's testimony, upon motion of defendant, the case was taken from the jury, on the ground that there was not sufficient testimony to sustain a verdict, and an order of dismissal was made. From the judgment following this order, this appeal is prosecuted.

It is alleged that the court erred in sustaining respondent's challenge to the sufficiency of the evidence, and in refusing to permit certain testimony which we will hereafter refer to. It appears from the record, and the statements made by the court, that the court was of the opinion that the burden of proof was upon the appellant to show that the death of the insured did not occur by reason of some of the exceptions incorporated in the policy. From an examination of all available authority on that subject, we are forced to the conclusion that the court erred in this particular. It is the established and universal law that insurance policies are to be construed in favor of the insured, and most strongly against insurance companies. This is a reasonable rule, considering the fact that these policies are prepared by men who are learned in the law and trained in preparing contracts of

this kind, and who have studied the legal effects of all the multifarious provisions in the ordinary insurance policies, whether accident or life; while the insured are frequently men and women of limited understanding, of simple methods of thought, and who, as a rule, would not be capable of technically construing doubtful provisions in a contract. Speaking of this proposition, it was said by the supreme court of Alabama, in *Equitable Accident Ins. Co. v. Osborn,* 90 Ala. 201, 9 South. 869, 13 L. R. A. 267:

"Exceptions of this kind are construed most strongly against the insurer, and liberally in favor of the insured. This is now the settled rule for construing all kinds of insurance policies, rendered necessary, especially in modern times, to circumvent the ingenuity of the insurance companies in so framing contracts of this kind as to make the exceptions unfairly devour the whole policy."

In conformity with this rule, an examination of the subject shows that almost universal authority imposes upon the insurance company the burden of establishing the fact, in an action on an accident insurance policy, that the accident happened by reason of something that was excepted from the provisions of the policy; and that the burden is not imposed upon the insured to affirmatively show that the accident did not occur by reason of any or all of the exceptions incorporated in the policy. The rule is thus announced in 1 Cyc. 289:

"As to accidental character of injury. On an issue as to whether the injury to or death of the insured was caused by accidental means or by some cause excepted by the policy, the legal presumption is against the insanity of insured, intentional injuries by third persons, lack of due care and diligence, self-inflicted injuries, and suicide. These presumptions may be overcome, however, by facts and circumstances establishing the contrary."

Further, under the head of Burden of Proof:

"The burden of proof is on plaintiff to show that the injury or death was due to accidental or other means specified in the policy, . . . The burden rests on the defendant to

show that the policy has been avoided by reason of a breach of some condition precedent, or that the injury or death was caused by some act which is made an exception to the risk in the policy, or that the action was not brought within the time required by the policy."

*Meadows v. Pacific Mut. Life Ins. Co.,* 129 Mo. 76, 31 S. W. 578, 50 Am. St. 427, is a case almost identical in circumstances and in principle with the one at bar. There it was shown that the deceased left the depot for the purpose of boarding a freight train standing at the station, and was soon after found mangled on the railroad track; and it was held that, under such proof, in the absence of other evidence, the death was accidental. From a long and carefully considered opinion, in which many cases are reviewed, we quote the following excerpt:

"The plaintiff showed beyond controversy that Daniel Meadows died of violent injuries, which were plainly visible upon his body; that the nature of these injuries left no doubt that they were the sole cause of his death and proper proofs were made. Here he rested. He had made a *prima facie* case, unless we are required to presume that because he was killed by being run over by cars on a railroad track, he was voluntarily exposing himself to unnecessary dangers and was violating his agreement in regard to being upon a roadbed of a railroad, within the meaning of the policy. Such a presumption would destroy the presumption indulged by the law that Meadows was at the time exercising proper care for his safety. In the absence of all evidence to the contrary the law presumes that he was exercising due care for his protection;"

quoting from *Allen v. Willard,* 57 Pa. St. 374, where the court said:

"The natural instinct which leads men in their sober senses to avoid injury and preserve life, is an element of evidence. In all questions touching the conduct of men, motives, feeling and natural instincts are allowed to have their weight."

The court then quoted from *Parsons v. Missouri Pac. R. Co.,* 94 Mo. 286, 6 S. W. 464, where it was said:

"There is no contributory negligence in the case, so far as the evidence in the record goes. It can only be found by indulging in unwarranted presumptions. The only presumption the law indulges in respect thereof is, that the deceased was in the exercise of ordinary care and diligence at all times in the discharge of his duties until the contrary appears;"

citing *Buesching v. St. Louis Gaslight Co.,* 73 Mo. 219, 39 Am. Rep. 503; *Huckshold v. St. Louis etc. R. Co.,* 90 Mo. 548, 2 S. W. 794; and *Crumpley v. Hannibal etc. R. Co.,* 111 Mo. 152, 19 S. W. 820, to the effect that it was not incumbent upon plaintiff in the first place to prove that the deceased was in the exercise of ordinary care and prudence; and *Mallory v. Traveler's Ins. Co.,* 47 N. Y. 52, 7 Am. Rep. 410, and *Lancaster, Adm'r v. Washington Life Ins. Co.,* 62 Mo. 121, to the effect that, in the absence of all evidence as to how the insured came to be thrown under the train which killed him, the presumption was that it was the result of accident.

Another carefully prepared opinion is that of Judge Day of the United States circuit court, in the case of *Standard Life & Acc. Ins. Co. v. Thornton,* 100 Fed. 582, 49 L. R. A. 116, where, after an analysis and review of the authorities, it was said:

"This presumption must stand in the case, and be decisive of it, until overcome by testimony which shall outweigh the presumption. It casts upon the defendant who claims that the death was intentional the burden of establishing it by a preponderance of testimony."

Where, in an action on a contract of insurance, it is claimed that death resulted from one of the excepted causes enumerated on the back of the policy, it was held in *Railway Officials & Employees' Acc. Ass'n v. Drummons,* 56 Neb. 235, 76 N. W. 562, that the plaintiff was only required to bring her case within the terms of the policy appearing on its face; that she was not required to negative the conditions or exceptions indorsed thereon; that in declaring on a con-

tract which contains exceptions, conditions, or provisos, it is not necessary for the pleader to do more than allege the general clause under which his cause of action has arisen; that he is not obliged to set out and negative a distinct clause which operates as an exception to the general clause, but which was not incorporated in it; that such condition afforded the basis for an affirmative defense which would defeat a recovery if sustained by adequate proof; and that the burden of proving that death resulted from any of the causes enumerated on the back of the policy was on the defendant; citing *Anthony v. Mercantile Mut. Acc. Ass'n,* 162 Mass. 354, 38 N. E. 973, 44 Am. St. 367, 26 L. R. A. 406; *Granger's Life Ins. Co. v. Brown,* 57 Miss. 308, 34 Am. Rep. 446; *Home Benefit Ass'n v. Sargent,* 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160.

But it is needless to quote authority, for the overwhelming weight of judicial opinion sustains this rule. In fact, this is not denied by the learned counsel for respondent, but he asserts that good law is not made of numbers of authorities, and that logic alone is weight. Outside of the presumption, which ordinarily attaches, that the numerical weight of authority correctly expresses the law, an examination of the authorities on this proposition, together with the reasoning advanced to sustain the decisions, convinces us that the appellant's contention must be sustained, not only by the numerical strength of decision but by the weight of logic.

If it be true, then, that the burden was upon the respondent to show that the death of the insured was caused by an infraction of some of the provisions which were exceptions to the provisions of the policy, the cases relied upon by the lower court and decided by this court, viz., *Armstrong v. Cosmopolis,* 32 Wash. 110, 72 Pac. 1038, and *Reidhead v. Skagit County,* 33 Wash. 174, 73 Pac. 1118, would sustain the appellant's contention instead of the decision of the court. Those were personal damage cases, where a recovery could be based only upon the negligence of the defendant; and the

announcement by this court that jurors should not be allowed to guess at how an accident occurred, but that there must be some proof on that subject before a recovery could be had, would apply here to the proof which must be demanded of the respondent. A *prima facie* case having been made out by the appellant, the negligence of the insured in violating any of the excepted causes in the contract must be proven by the respondent.

On the proposition which might arise on a retrial of the cause in relation to the meaning, within the contemplation of the parties to the contract, of the phrase "right of way," there seem to be no direct adjudications. It is not contended by the respondent that the expression "right of way," as used in the policy, contemplates the full four hundred feet right of way that this company has where the accident happened, but that it means something more than the mere roadbed. Contracts of this kind, like other contracts, must be construed with reference to what was the probable intention of the parties. What interest was to be protected; what danger guarded against? Construing this contract in the light of these queries, and not being bound by its pure literalism, we must conclude that the object of the precautionary provision was to prevent recovery for accidents by cars. Such accidents must of necessity happen on the road bed. It is plain that the occupancy of the right of way outside of the roadbed would not increase the hazard, and we are inclined to construe the expression "right of way" as meaning the way that the train has a right to travel, and can travel, viz., on the track, which designates the only ground over which the train *can* travel, and the only place at which it can do any injury to any one trespassing on its right of way.

After the court had indicated its view as to where the burden of proof rested in this case, the appellant asked to have the case opened for the purpose of introducing testi-

mony in relation to the circumstances under which the accident happened. Leave was granted, and witness Munger was called to testify in that particular. Mr. Munger testified, that he was called immediately after Starr was discovered; that he was at his home about three blocks from the depot; that he at once dressed and went to the depot, found Starr lying on the floor with his arms crushed, and within ten or fifteen minutes thereafter the statement was made to Mr. Munger and Dr. Marion which the appellant offered in evidence. The witness stated that he thought it was about an hour after the accident when this statement was made by Starr. His only way of estimating the time, however, was by the fact that he had been sent for and had had time to dress, and that it was a few minutes after he arrived at the depot when Starr made the statement. This testimony was objected to by counsel for respondent, and the objection sustained on the ground that the testimony was not a part of the *res gestae,* too long a time having elapsed after the accident before the statement was made by Starr to the witness. The offer was as follows:

"Mr. Williams: I offer to show by this witness that the deceased and insured, Martin Luther Starr, just after the accident, at the time that the witness talked to him as has already been stated, stated to the witness that he had reached the depot before the train arrived, and that he left the depot for the purpose of attending to a call of nature and crossed the track, went over back of the warehouse; and will show by evidence if I can that the warehouse was in the direction of Tacoma from this road, this highway crossing; and that while he was there the train came in sooner than he expected, and stopped. He found the train a vestibuled train and he could not board the train from the side on which he was then and that the only way that he could get aboard the train was to go around the rear of the train, and that he started to run around the rear of the train, that he stumbled and fell and struck his head against a railroad tie or some other obstruction and was rendered unconscious, and in that condi-

tion he remained until after the train pulled out, and that when the train pulled out he discovered then that he had sustained these injuries which he had at the time he was found by these persons; and intend to show by other evidence than this witness to make the connection, after I have introduced this evidence, that at the time of the injury he was on this highway that was crossing the track."

It may be that, under the rule which we have announced in relation to the burden of proof, appellant, upon a retrial of this case may not find it necessary to again offer this testimony; or it may be that testimony may be offered by the respondent in relation to the manner in which this accident occurred which will necessitate the offer of this proof. So that, in view of a contingency of that kind, we think it best to pass upon the admissibility of the testimony offered. The ordinary rule is that a statement of this kind must have been made so recently that it would leave no room for collusion or premeditated self-serving. But no time can be arbitrarily fixed, it depending so largely upon the circumstances of each individual case. In *Dixon v. Northern Pac. R. Co.,* 37 Wash. 310, 79 Pac. 943, we held that fifteen minutes was not so long a time as would exclude the testimony; and in *Roberts v. Port Blakeley Mill Co.,* 30 Wash. 25, 70 Pac. 111, that testimony given within three hours after a railroad accident had occurred could be admitted as *res gestae.* In this case, considering the facts that the man's associates had left him, and that he was so mangled and crushed that an amputation of his arms was necessary, and that he died within thirty-six hours of the accident, it would be a violent presumption to indulge that the statement was made for a self-serving purpose; and we think that the refusal of testimony under such circumstances would tend to work an injustice by excluding testimony which would have a tendency to throw light on a transaction which would otherwise be obscure for want of evidence.

Under all the circumstances of the case, we think the judg-

ment must be reversed and a new trial granted, and it is so ordered.

MOUNT, C. J., HADLEY, FULLERTON, RUDKIN, and ROOT, JJ., concur.

CROW, J., having been of counsel, took no part.