STANDARD INSURANCE COMPANY *v.* LANGSTON.

Opinion delivered April 6, 1895.

1. *Accident insurance—Negligence of insured.*

In an action upon an accident insurance policy, conditioned that the insured shall use due care for his personal safety, where the evidence tended to prove that plaintiff's injuries were the result of his failure to use such care, it was error to instruct the jury that the negligence of the insured is no defense.

2. *"Roadbed" of railway defined.*

The term "roadbed," in an accident policy, excepting injuries received in consequence of insured's "walking or being on the roadbed of any railway," means that part of the bed or foundation on which the superstructure, consisting of the ties, rails and fastenings, rests, but does not include the ends of ties of unusual length where persons standing or sitting would be beyond the reach of injury by passing trains.

Appeal from Jefferson Circuit Court.

JOHN M. ELLIOTT, Judge.

*Austin & Taylor* for appellant.

1. The court erred in its charge to the jury. The contract was only against accidents, and it was expressly provided that the insured should "at all times use due care and diligence for his personal safety and protection." The facts in this case show a reckless disregard of personal safety—such an unnecessary exposure to obvious danger that it is condemned by the general knowledge and experience of all prudent persons. 48 Ark. 129 ; 134 Mass. 175 ; Richards on Ins. p. 526 ; 80 Ga. 541 ; 133 N. Y. 366 ; 42 N. W. 936.

2. Appellee was in open and voluntary violation of the terms of the policy by being on the roadbed of a railway. See 102 Pa. St. 262 ; 4 Bush, 535 ; 3 Ins. L. J. 877 ; 15 Blatchf. 216 ; 41 Am. Rep. 127 ; 17 Can. L. J. 44.

3. The roadbed is the bed or foundation on which the superstructure rests. 118 U. S. 413 ; 63 Cal. 469 ; 25 Neb. 348.

*H. King White* and *W. T. Woolridge* for appellee.

Whether or not appellee unnecessarily exposed himself to danger, or was injured while being on the roadbed of a railway, were all questions of fact to be determined by the jury, and they were so determined in favor of appellee. There was evidence to support the findings. 46 Ark. 524 ; *Ib.* 141 ; 49 *id.* 381 ; 51 *id.* 467. His falling asleep and the injury were purely accidental and unexpected. These policies should be given a common sense construction. The mere fact that appellee was upon the roadbed should not defeat his right to recover. 8 Am. St. Rep. 758 ; 1 Am. Rep. 157 ; 46 *id.* 618 ; 47 N. Y. 52 ; Richard on Ins. p. 213-215 ; *Ib.* 522 ; *Ib.* 524 ; 102 Pa. 262 ; Richard on Ins. p. 528.

BATTLE J. On the 18th of April, 1890, the Standard Life and Accident Insurance Company, for a valuable consideration, executed to John W. Langston a

policy, and thereby insured him against "the effect of injury to the body caused by external, violent and accidental means." On the 24th of June following, at about 12 o'clock in the night, Langston lay, apparently asleep, in the railroad yards at Alvarado, Texas, with his arm across one of the rails of the railway track. While he was in this position, a train ran over and crushed his arm to such an extent as to make amputation necessary, and by reason thereof he lost his arm.

Afterwards Langston brought this action against the insurance company on the policy to recover the sum the defendant had thereby agreed to pay him as an indemnity for such injuries as he had received. The defendant answered, and alleged, among other things, that the injury to him was caused by his own negligence.

The defense was based on the contract of insurance, one of the conditions of which is in these words: "It is an express condition of this policy that the insured shall, at all times, use due care and diligence for his personal safety and protection." The circumstances upon which the company relied to sustain its defense, as shown by the evidence, were about these: When the plaintiff was about to leave Alvarado, where he was at the time of the accident, an engineer invited him to take passage with him in the cab of a locomotive, and proposed to take him to Taylor, where he (the plaintiff) was going. He accepted the invitation, got in the cab, and moved on it into the railroad yard. Here the engineer left him to be gone a few minutes. There were many side tracks at this place, which was about one hundred yards north of the depot. Three or four trains, at this time, were leaving every hour. Being warm, he left the locomotive, and went about three side tracks, and sat down on the end of a tie, which was over thirty inches longer than the ordinary cross-tie; was conscious when he sat down;

had been up late in the night before; supposed he fell asleep. The next thing he knew his arm was injured. A train of twenty-seven cars had passed over it in two places, thus indicating that his arm was akimbo across the rail, his hand not being mangled. He endeavored to get up, jerked his arm, thinking his coat was fastened, and "heard something tear," felt a stinging sensation, and discovered that he had lost his arm.

But the jury returned a verdict against the insurance company in favor of the plaintiff; the court rendered judgment accordingly; and the defendant appealed.

1. When insured's negligence a defense.    Among the exceptions to the proceedings at the trial, which are relied on for reversal, is the giving of two instructions to the jury over the objections of the appellant. The court instructed the jury that "an accident is the happening of an event without the aid and design of the person injured, and which is unforeseen; and that the negligence or carelessness of the insured is no defense to an action on a policy of insurance against accidents." This is not the law in this case.

The appellant was only liable by its contract to pay appellee an indemnity on account of personal injuries received. To the extent and upon the terms it contracted to insure, it is liable, and no further. It insured the appellee against "the effect of injury to the body caused by external, violent and *accidental* means—by "accidental means;" that is to say, the means which produces the injury must be something unforeseen, unexpected and unusual at the time it occured. *U. S. Mutual Accident Association* v. *Barry*, 131 U. S. 100; *North American Life & Accident Insurance Co.* v. *Burroughs*, 69 Pa. St. 43, 51. One of the conditions upon which the appellant undertook to pay appellee an indemnity on account of such injuries was that he should at all times "use due care and diligence for his personal

safety and protection." No recovery against the insurance company can be had on account of injuries which are the results of the failure of appellee to use such care and diligence. As a condition to the right to maintain an action on the policy, he was bound to exercise, at all times, that care or diligence which prudent persons are accustomed to use. *Keene* v. *New England Mut. Acc. Ass'n*, 161 Mass. 149; *Tuttle* v. *Traveler's Ins. Co.* 134 Mass. 175; *Sawtelle* v. *Railway Passenger Assurance Co.* 15 Blatchf. 216; *Stone* v. *U. S. Casualty Co.* 34 N. J. L. 371.

Another stipulation in the policy on which the appellant relied, in his answer, to defeat this action was that the covenant to insure against injuries should not cover such as might happen to the insured in consequence of his "walking or being on the roadbed of any railway." It asked the court to instruct the jury to find for the appellant, because the appellee, not being an employee of a railway company, voluntarily and unnecessarily went upon the roadbed of a railway, and, while there, received the injury on account of which he sued; and that "the roadbed of a railway consists of that part of the bed or foundation on which rest the ties or other superstructure." But the court refused to give these instructions, and the appellant now urges that the court erred in so doing, and insists that its judgment should be reversed because of the refusal.

The word "roadbed," when used in reference to railways, has a well-understood meaning. It is the bed or foundation on which the superstructure of the railway rests, and the superstructure is the sleepers or ties, rails and fastenings. This, of course, includes the side tracks, which form a part of the railway. *Santa Clara Co.* v. *Southern Pacific Ry.* 118 U. S. 413; *San Francisco* v. *Central Pacific R. Co.* 63 Cal. 467, 469; *San Francisco etc. R. Co.* v. *State Board*, 60 Cal. 12, 34;

2. Meaning of term "road bed."

*Cass County* v. *C. B. & Q. R. Co.* 25 Neb. 348, 353. In this sense it was, doubtless, used in the policy sued on in this case. But, in using it in this sense, it is presumed that the parties had reference to the manner in which railroads are usually constructed, and did not include in its meaning the ends of ties of unusual and extraordinary length, and extending to a place where there can be no possible collision with cars, and where persons standing or sitting would be beyond the reach of injury by passing trains. Such a state of facts was not reasonably within the contemplation of the parties. Contracts of insurance, like other contracts, should be construed and enforced according to the intent of the persons making them.

The instruction as to what constitutes the roadbed of a railway, which the appellant asked for, was substantially correct, but should not have been given without a modification showing that the word "roadbed" should be understood in this case in the sense we have indicated it was used in the policy. Whether the appellee was on the roadbed, in the sense so used, was a question of fact for the jury to decide, if there was any room for doubt about it.

We have no occasion for deciding whether crossing the roadbed of a railroad, when traveling along a public highway, or along a private way, which the assured has a right to use, is "walking or being on the roadbed," within the meaning of the policy sued on. That question is not presented.

For the error indicated, the judgment of the circuit court is reversed, and the cause is remanded for a new trial.