Gantt, P. J.
This is an action on an accident insurance policy by the administrator of the assured, Daniel A. Meadows, deceased, for $5,000. The petition contains the usual averments, and alleges that said Daniel A. Meadows lost his life on or about July 30, 1892, by being “accidentally run upon and over by a car or train of cars, on the track of the Hannibal & St. Joseph Railroad Company, at the city ofChillicothe, in the state of Missouri,” and prayed judgment for the sum assured.
The answer is a general denial and a plea of the following conditions in the policy, to wit:
“The claimant shall establish affirmatively under any claim or proceeding thereunder, that the injury or death resulted from actual accident according to the policy.” And, further: “The insured agrees to use due diligence for personal safety and protection; and this insurance does not cover, and the company will not be liable for, injury nor '-death while engaged in, caused by, resulting from, or attributable partially or wholly to any of the following causes: Voluntary exposure to unnecessary danger or perilous venture, violating law or the rules of any company or corporation, intentional injuries inflicted by the insured or any other person, or entering or trying to enter or *83 leave any moving conveyance propelled by steam power, or riding in or upon any such conveyance not provided for the transportation of passengers or being upon a railroad bridge, trestle, or roadbed.”
The answer pleaded that the deceased was acting in violation of said conditions at the time of the accident, and that his death occurred by reason of such violation, and by reason of voluntary exposure to unnecessary danger, and by reason of being upon the roadbed of the Hannibal & St. Joseph railroad at Chillicothe, Missouri.
The policy contained the conditions pleaded in the answer, and a great number of other conditions exempting the company from liability for- accidents of almost every conceivable character. Indeed, it is somewhat difficult to name an accident, as society is now constituted, for which defendant would be liable, if a strict technical construction is indulged as to each of these conditions. The sixth clause of the conditions indorsed upon the policy is as follows:
“6. This insurance does not cover, and the company will not be1 liable for disappearances, nor injury (nor death resulting from the same) of which there is no visible mark upon the body of the insured, the body itself, in case of death, not being considered such mark produced at the time of and by the accident; nor injury nor death, while engaged in, caused by, resulting from, or attributable partially or wholly to any of the following causes: Disease or bodily infirmity, or act committed by the insured while under mental aberration produced by disease or bodily infirmity, fits, vertigo, hernia, sleep walking, intoxication, use of narcotics or anesthetics, medical or surgical treatment (amputation rendered necessary by the injury and made within ninety days excepted), sunstroke, freezing, taking of poison, contact with poisonous sub *84 stances, inhalation of gas or vapor (voluntary or otherwise), war or riot, quarreling or dueling, fighting, wrestling, racing, excessive lifting, voluntary over exertion, gymnastic sports (except for amusement), suicide (sane or insane), any vicious act, voluntary exposure to unnecessary danger or perilous venture (unless in the humane effort to save human life), violating law or the rules of any company or corporation, intentional injuries inflicted by the insured or any other person (except as hereinafter otherwise provided), or entering or trying to enter or leave any moving conveyance propelled by steam power (except cable or electric cars), or riding in or upon any such conveyance not provided for the transportation of passengers, or being upon a railroad bridge, trestle or roadbed (railroad officers and employes while engaged in their prescribed duties as such excepted).”
There was a reply denying that deceased had broken any condition of the policy. Plaintiff obtained judgment, and defendant appeals. The facts are as follows:
It was admitted at the trial that plaintiff was the qualified and acting administrator of the estate of Daniel Meadows; that notice of his death was given and that due proof was furnished as required by the policy.
Daniel Meadows, at the time of his death, was a stock man, fifty-nine years old, engaged in buying and selling mules. On the night of his death, he went on the Wabash railroad from Gallatin to Chillicothe. At Gallatin he and witness Noll had a conversation. He said he lived in St. Joseph, and seemed very anxious to get home, and, on being asked what he was going to Chillicothe for, when he could take the Rock Island road for home, said he .could go to Chillicothe and catch a train there almost any time, and he could not *85 on the Rock Island. At Chillicothe about 1 a. m. that night, he talked with John Fitzpatrick, the night telegraph operator, at the window at the Wabash depot, for a few minutes, and inquired when he could get a train for St. Joe, and was told he could get a passenger train at 4:20 a. m. On being told that there was a freight train there, but it would not carry passengers, he said “I am a stock man, and they all know me. I am a stock man, and they will carry me.” He then left and went west from the depot to Elm street, thence south on Elm street. At this time an east bound freight train was standing on the north track of the Hannibal and St. Joe Railroad, east of Elm street, and a west bound train on the side track.
Ten or fifteen minutes afterward the night operator, with whom he had been talking, heard a yell, as if from someone in distress, and at the same time heard a train moving. It was a very dark night. Both' the east and west bound freights were there in the yards, the east bound train being on the north and main track. About eight car lengths east of where the caboose of that east bound freight stood that night, and about opposite the usual place for the west bound freight to stand on the side track, the body was afterward found, about 2 a. m., cut in two, the lower part between the rails of the main track, and the upper part between the passing track and the main track. The body was cut diagonally across. The body was first found by John Slaughter, a brakeman on the west bound freight train. That train pulled into the yards and stopped with its engine at the tank, fifteen or twenty yards west of the Hannibal depot, to take water, and then pulled in on the passing track to wait for the east bound train to pull out. The two trains were not on the tracks together for any length of time. After the east bound train had gone, Slaughter started *86 ahead to change the switch, and found the legs of the body between the rails of the north track, and the upper part of the body just south of the south rail of that track. Slaughter touched the face of the body, and found it not yet cold.
Two east bound freights passed through Chillicothe that night. The first one met the west Mound freight tea miles east of Chillicothe; it stopped at Chillicothe about five minutes, did no switching; it pulled in slowly with the headlight burning; the engineer could have seen a man or the body' of a man on the track, but saw nothing of the kind. He examined the wheels of his engine at Brookfield when he heard of the accident and saw no indications of having run over a man. The other east going freight had between fourteen and nineteen cars; it did no switching there. The engine stopped for ten or fifteen minutes at the tank, ten or fifteen feet east of the depot, which left the hind end of the train just east, or a car length or two east, of Elm street. At the rate at which it ran in, the engine, in the opinion of the engineer, would have thrown a man from the track. The. headlight was burning and the electric light was burning. The engineer could have seen a man or the body of a man on the track in front of his engine if one had been there, but he saw nothing of the kind.
Art examination of the accompanying plat will aid in understanding the situation at the place of the accident. Elm street, where Mr. Meadows was last seen alive, runs north and south across the railroad tracks just west of the Wabash depot. The tank at which the eastbound engine was then taking water is indicated by a T shaped mark between the Hannibal tracks, just east of the Hannibal depot. The distancefrom the Hannibal depot to Elm street, is about two hundred yards. The dis *88 tancé between the two Hannibal tracks is ten feet. The body was found at the place of the cross mark, opposite the oil tank. This was about midway of the parallelogram indicating a park, spoken of in the testimony. An electric arc light hangs north of the Hannibal tracks, just west of the Hannibal depot. There is an even grade between the Hannibal and Wabash depots. Between the main track and the passing track there is a uniform space of ten feet, the condition of the ground just the same as on the north side of the main track, filled with fine einders and beaten down.

*87

*88 Witness Darby says the ground from Elm street east between the tracks is smooth and level. The undisputed evidence is that the rear end of the east bound train on the main track was a considerable distance east of Elm street. There was no. witness to the accident.
The theory of the defendant, as shown by its second instruction, is, that, after leaving the Wabash depot, Meadows went east on the north side of the main track of the road, upon which the east bound train was standing, and attempted to pass between two of the cars of that train, intending by that way to reach the west bound train oh the south or passing track; or he walked along the south side, and was caught by the ears and killed; and m support of the theory relies upon the evidence that the trunk of the remains was found between the main and side tracks, and the legs between the rails of the main track, and the evidence of Fitzpatrick as to Meadows’ purpose to take the west bound train to St. Joseph. Whereas, plaintiff insists this theory is met by the facts that Meadows was familiar with the depot grounds; that he knew the smooth, beaten ground ten feet wide between the main and passing tracks; that the east bound train on the main track was standing east of Elm street, on which he *89 passed from the Wabash depot to the Hannibal tracks; the improbability of his spending ten or fifteen minutes going so short a distance as that between the Wabash depot and the point where he was supposed to have been struck, and’the extreme difficulty of believing that a rational man would be guilty of the incredible folly of standing on Elm street, where he could look east over a familiar, level, unobstructed way to the train he wanted to reach, and deliberately choosing a way he knew would involve the difficulty and peril of passing between the cars of a train standing on the main track.
The court gave the following instructions for plaintiff:
“1. The jury are instructed if defendant issued to Daniel A. Meadows the policy read in evidence, and if they believe from the evidence that said Daniel A. Meadows, on and about the thirtieth day of July, 1892, was accidently run upon and over by a car or train of cars on the track of the Hannibal & St. Joseph Railroad at Chillicothe, Missouri, whereby he sustained such violent and accidental injuries as to be externally visible upon his person, and which injuries, independent of all other causes, occasioned his death within ninety days from the happening of such accident; that plaintiff gave defendant immediate notice in writing with full particulars of the accident and furnished defendant with affirmative proof of the death of said Meadows within seven months of the date thereof; then the finding should be for the plaintiff.
“2. The term ‘road bed’ of a railroad means that part of the railroad company’s right of way which is occupied by the ties and rails constituting the railroad track, and not the entire space included in such right of way, and in this case the ten feet of space mentioned in evidence between the tracks of the Hannibal & St. Joseph Railroad, mentioned in evidence, is not a part *90 of the roadbed of said, railroad within the meaning of the condition of the policy read in evidence.
“3. In absence of proof, to the contrary, the law presumes that Daniel A. Meadows was at the time of his death exercising proper care for his safety.”
For the defendant the court gave the following instructions:
“1. The court instructs the jury that, under the terms of the policy sued upon, Daniel A. Meadows, deceased, was required to use due diligence for his personal safety and protection and was prohibited from voluntarily exposing himself to unnecessary danger or perilous venture. By the term ‘due diligence’ as used in this instruction is meant the exercise of such care and caution as an ordinarily prudent man would use under similar circumstances; and by the term ‘voluntarily exposing himself to unnecessary danger or perilous venture’ is meant the intentional doing of some act which reason and ordinary prudence would pronounce dangerous. And if you beheve from the evidence that the deceased, Daniel A. Meadows, was killed because of his failure to use due diligence for his personal safety and protection, and because of his voluntary exposure to unnecessary danger or' perilous1, venture as these terms are defined dn these instructions, your verdict must be for the defendant.
“2. The jury are instructed that if they believe from ;the evidence that Daniel A. Meadows, deceased, at the time he met his death was voluntarily exposing himself to unnecessary danger, they will find for the defendant.
“And the court further instructs the jury that an attempt to pass between two of the cars of a train upon the track of the Hannibal & St. Joseph railroad, at Chillicothe, Missouri, at night, the train having the engine attached and being in condition to run, would *91 constitute voluntary exposure within the meaning of this instruction.
“3. The court instructs the jury that if they believe from the evidence that Daniel A. Meadows was killed while being upon, or attempting to board, a train not provided by the railroad for the transportation of passengers, your verdict must be for the defendant.
“á. The court instructs the jury that if you believe from the evidence that Daniel A. Meadows, was killed while in the act of walking along or being upon the roadbed of the Hannibal & St. Joseph Railroad, at Chillicothe, Missouri, your verdict must be for the defendant.
“5. The court instructs the jury that in determining the question as to whether or not Daniel A. Meadows was chargeable with negligence, the jury must take into consideration all the facts and circumstances that were given in the case.”
I. Before proceeding to certain specific exceptions discussed by counsel it seems best to determine where the burden lies in this case.
The policy declared on insures Daniel A. Meadows in the sum of $5,000' for the term of twelve months, commencing at 12 o’clock noon, on the eleventh day of July, 1892. Said sum to be paid to his legal representatives (if he be dead) “after due notice and satisfactory proof that the insured has, during the continuance of this policy, sustained -such violent and accidental injuries as shall externally be visible upon his person, and which, independently of all causes, shall have occasioned death within ninety days from the time of the happening of such accident” upon certain conditions indorsed upon the back thereof. Other conditions were indorsed upon the back of said policy, among them the two following:
*92 “The claimant shall establish affirmatively under any claim or proceeding thereunder, that the injury or death resulted from acüial accident according to the policy.” And further: “The insured agrees to use due diligence for •personal safety and protection; and this insurance does not cover, and the company will not be liable for injury nor death while engaged in, caused by, resulting from, or attributable partially or wholly to any of the following causes: Voluntary exposure to unnecessary danger or perilous venture, violating law or the rules of any company or corporation, intentional injuries inflicted by the insured or any other person, or entering or trying to enter or leave any moving conveyance propelled by steam power, or riding in or upon any such conveyance not provided for the transportation of passengers, or being upon a railroad bridge, trestle, or roadbed.”
The primary question is, what amount of proof is necessary to establish a prima facie case for plaintiff. In short, must he not only establish that the death of the assured was caused by “such violent and accidental injuries as shall externally be visible upon his person, and, independently of all other causes, occasioned his death within ninety days from the happening thereof,” but must he also prove that his intestate’s death was not caused by his violation of some one or more of the vast number of conditions and executory stipulations as to his future conduct indorsed upon said policy?
The general rule of pleading upon a contract which contains conditions, exceptions or provisos is thus stated by the supreme judicial court of Massachusetts in Commonwealth v. Hart, 11 Cush. 130: “If such instrument contain in it, first, a general clause, and afterward a separate and distinct clause which has the effect qf taking out of the general clause something that would otherwise be included in it, a party, relying upon the *93 general clause, in pleading, may set out that clause only, without noticing the separate and distinct clause which operates as an exception; but if the exception itself be incorporated in the general clause, then the party relying on it must, in pleading, state it together with the exception.”
And the pleader is only required to state the substantive facts which he is bound to prove. Grould, PL, ch. 4, secs. 20, 21; Vavasour v. Ormrod, 9 Dowl. & Ryl. 597; s. c., 6 B. & C. 430; 2 Saunders, Pl. & Ev. [2 Ed.] 1025, 1026.
It has been ruled by the supreme court of the United States in Ins. Co. v. Ewing, 92 U. S. 377, that in actions upon policies containing many provisos and conditions, the courts will require the insurance company to prove the want of compliance with any particular proviso or condition upon which it relies, and this has been generally held as to the condition usually incorporated in life insurance policies that the policy shall be invalid if the assured shall commit suicide, the burden in such cases being cast upon the company to aver and prove the breach of that condition. Hodsdon v. Ins. Co., 97 Mass. 144; Campbell v. Ins. Co., 98 Mass. 381; Redman v. Ins. Co., 49 Wis. 431; Ins Co. v. Brown, 57 Miss. 308.
We think that the plaintiff here was only required to prove that the death of Daniel Meadows was caused by violent and accidental injuries, visible upon his person, and that due notice of his death and proof of loss were made within the time required by the policy, and that defendant had the burden of proving that his death was caused by one of the conditions by it specially pleaded. But for the stipulation in the policy, the negligence of the deceased would have constituted no defense whatever to the action. A fair construction of it simply permits a plea of contributory negligence and *94 the burden of sustaining that plea is upon the defendant who asserts it. Home, etc., Association v. Sargent, 142 U. S. 691; Freeman v. Ins. Co., 144 Mass. 572; Anthony v. Mercantile, etc., Association, 38 N. E. Rep. 973; Badenfield v. Massachusetts, etc., Association, 154 Mass. 77; Goldschmidt v. Ins. Co., 102 N. Y. 486.
The plaintiff averred that all the conditions of the policy had been observed by his intestate. We think that the burden of establishing a violation of' the executory stipulations that Mr. Meadows should use due diligence for his personal safety and would not voluntarily expose himself to danger by going upon the roadbed of a railroad properly devolved upon defendant, and shall so treat it in the further disposition of the cause.
The importance of settling the question of the burden of proof becomes at once apparent when we come to consider the decisive question in the case, the action of the circuit court in overruling the demurrer to the evidence.
Defendant urges that every reasonable inference or rational conjecture tends to show that Meadows was attempting to pass between the cars of the east bound train of the Hannibal & St. Joseph Railroad, and thereby lost his life; that in so doing he was violating his agreement with defend ant by voluntarily exposing himself to unnecessary danger and by being upon said roadbed.
But much of this is speculation. The plaintiff showed beyond controversy that Daniel Meadows died of violent injuries, which were plainly visible upon his body; that the nature of these injuries left no doubt that they were the sole cause of his death and proper proofs were made. Here he rested. He had made a prima facie case, unless we are required to presume that because he was killed by being run over by cars on a *95 railroad track, he was voluntarily exposing himself to unnecessary dangers and was violating his agreement in regard to being upon a roadbed of a railroad, within the meaning of the policy.
. Such a presumption would destroy the presumption indulged by the law that Meadows was at. the time exercising proper care for his safety. In the absence of all evidence to the contrary the law presumes that he was exercising due care for his protection. There is not a word of evidence tending to show he was intoxicated, or that he was robbed and murdered. He was a man of the full age of discretion and of business habits. Under such circumstances, the language of Judge Agnew in Allen v. Willard, 57 Pa. St. 374, is very pertinent. He says: “The natural instinct which leads men in their sober senses to avoid injury and preserve life, is an element of evidence. In all questions touching the conduct of men, motives, feeling and natural instincts are allowed to have their weight, and to constitute evidence for the consideration of courts and juries.”
And this court in Buesching v. Gaslight Company, 73 Mo. 219, said: “Now, the law presumes that the deceased was in the exercise of ordinary care; and this presumption is not overthrown by the mere fact of injury.” Citing Shearman and Redfield, Negligence, sec. 44; Hoyt v. City of Hudson, 41 Wis. 105; Gay v. Winter, 34 Cal. 153.
And in Parsons v. Railroad, 94 Mo. 294, this court again said: “There is no contributory negligence in the case, so far as the evidence in the record goes; it can only be found by indulging in unwarranted presumptions. The only presumption the law indulges in respect thereof is, that the deceased was in the exercise of ordinary care and diligence at all times in the discharge of his duties until the contrary appears. ** * It was not *96 incumbent upon the plaintiff in the first place to prove that the deceased was in the exercise of ordinary care and prudence.” Buesching v. Gaslight Co., 73 Mo. 219; Huckshold v. Railroad, 90 Mo. 548; Crumpley v. Railroad, 111 Mo. 152.
And in the absence of all the evidence of how he came to be thrown under the train which killed him, the presumption is that it was the result of accident. Mallory v. Insurance Co., 47 N. Y. 52; Lancaster v. Insurance Co., 62 Mo. 121.
It follows that, by invoking these presumptions, plaintiff not only established a death by violence, but that he was in the exercise of ordinary care and prudence when he met his death, and that it was caused by accident.
Nor is this presumption rebutted by the unexplained fact that his body was found mangled upon a railroad track. There were many purposes for which he might lawfully go upon or across the railroad track.
In Badenfeld v. Massachusetts, etc., Association, 154 Mass. 77, a case strikingly similar to this, the trial court was asked to rule, upon the undisputed evidence, that the defense of want of due diligence or of voluntary exposure to unnecessary danger by the deceased was made out and to instruct the jury to find for defendant, which was refused and assigned as error. We can do no better than to adopt the reasoning of the supreme court of Massachusetts in that case:
“There was no evidence of the cause of his fall, and it can not be contended that the mere fact that he fell under the ear is a defense. The real contention of the defendant, expressed in different forms in its prayers for instructions, is that the mere fact that the deceased was in a dangerous place (on the platform east of the track), or, as stated in one prayer for instructions, doing a dangerous act (leaving a car while it was in *97 motion), is, as matter of law, conclusive proof that he did not use all due diligence for personal safety and protection, and that he voluntarily exposed himself to unnecessary danger. This is not an action against the railroad company in which the mutual rights and duties of a person injured and the company are involved. As regards the defendant, the deceased had a right to go upon the platform, and to examine the wall of the building, and the girders, and the platform, and the cars standing upon the track, and to enter and leave them. None of these acts would of itself be evidence of want of due diligence for personal safety, or of voluntary exposure to unnecessary danger. Any of them might be done carefully or carelessly. The manner and circumstances of the act would give character to it. The facts that the deceased was upon the platform, and that he was injured in the manner shown, clearly do not constitute negligence in law, or afford conclusive evidence of negligence.
“The defendant asked for instructions upon the hypothesis that the deceased fell while leaving the car when it was in motion. There was no evidence that he so fell, but, if it could be inferred, it would not be conclusive of his negligence. That would depend upon the circumstances, and there would be no presumption that the circumstances were such as to make it negligent. If the jury could surmise that he left the car when it was in motion under circumstances which rendered the act negligent, they could equally well surmise that he left it under circumstances which would show that the act was not negligent. * * * If the jury infer an act, they are not, without evidence, at liberty to infer the circumstances which made the act negligent. ' The jury could not properly base their verdict upon particular facts found without evidence. The real question was whether the facts directly proved *98 by the evidence, and those to be inferred from them, sustained the burden of proof which was upon the defendant, and this was clearly a question for the jury and not for the court, unless the court could rule that there was not sufficient evidence.”
In Anthony v. Mercantile, etc., Ass’n, 38 N. E. Rep. 973, a passenger in good health, on a train for Denver, was found unconscious upon the ground between the platform and the nearest rail of the track at Granite Station as the train was moving out of the station. His legs were crushed and he died in four hours. In addition to a clause providing that he should not voluntarily expose himself to unnecessary dangers or hazards was the following: “Standing, riding, or being upon the platforms of' moving railway coaches other than street cars, or riding in any other place not provided for the transportation of passengers, or entering or attempting to enter or leave any public conveyance using steam as motive power while the same is in motion, * * * are hazards not contemplated or covered by this certificate.” It was insisted, first, that the burden was on plaintiff to show that his intestate’s death was not caused by a violation of the clause last cited; and, secondly, that the court should have taken the case from the jury. But the supreme court of Massachusetts again held that, under the general rule of pleading, plaintiff was not required to allege or prove that the death was not caused by a violation of one of the conditions to which the insurance did not apply; and, secondly, that the court properly overruled the demurrer to the evidence; that, while the circumstances pointed strongly to the inference that the deceased was “standing, riding, or being” on the platform of the moving cars, yet, as a matter of law, a jury was not bound to find that fact.
*99 No error was committed in overruling the demurrer to the evidence. The circuit court could not say as a matter of law that defendant had affirmatively established its defense.
II. This brings us, then, to a consideration of the instructions.
The criticism of the plaintiff’s first instruction is, that it ignores the essential facts in the case, to wit, the facts tending to establish the defense. If this instruction stood alone and the theory of the defense had not been strongly and clearly brought out by defendant’s -instructions, defendant would have had just cause of complaint, but when all the instructions are read together, as they must be, it will be found there was no error. Owens v. Railroad, 95 Mo. 169; Bank v. Hatch, 98 Mo. 376; Spillane v. Railroad, 111 Mo. 564.
Nor was there any conflict between plaintiff’s first and defendant’s fourth. They were simply predicated upon different hypothetical views of the evidence.
III. Finally, it is insisted the court erred in defining “roadbed” in plaintiff’s second instruction. As already stated, that instruction is in these words:
“2. The term ‘roadbed’ of a railroad means that part of the railroad company’s right of way which is occupied by the ties and rails constituting the railroad track, and not the entire space included in such right of way, and in this case the ten feet of space mentioned in evidence between the tracks of the Hannibal & St. Joseph Railroad, mentioned in evidence, is not a part of the roadbed of said railroad within the meaning of the condition of the policy read in evidence.”
We are cited by counsel to the lexicographers for the definition of “roadbed” and to cases defining roadbeds for the purpose of taxation, but it seems to us these cases are not applicable here. The case of Piper *100 v. Mercantile, etc., Ass’n, 37 N. E. Rep. 759, is pertinent, but we think is distinguishable from the case at bar in the facts.
There the evidence disclosed beyond controversy that the deceased was walking longitudinally bn the roadbed between the tracks of the railroad in front of the engine and was struck and killed. The chief justice said: “The place where he was walking was not fitted up as a way; it was a part of the roadbed, and nothing more. That many people used it * * * is immaterial.”
In this case the evidence shows that the space be-, tween the main line of the Hannibal & St. Joseph Railroad and the park was a well beaten, level and smooth walk made of fine cinders beaten down, and the space between the main or north track and the passing track was of the uniform width of ten feet and of the same material as the walk between the park and the main track. Unlike the track in Piper v. Mercantile, etc., Ass’n, supra, the evidence showed it had been made smooth to walk on and the most prudent person would not have hesitated to have walked along said space, because there would be no danger from passing trains.
A reasonable and fair construction of these words was contained in the court’s instruction. It would be most unreasonable to hold that merely because this space was a portion of the right of way, that one seeking passage on the trains of the company, or called there on business to meet a relative or friend, on business or in the discharge of a social duty, should be charged with want of care for his welfare. There was ample space upon a well worn and smoothly trodden path and the court committed no error in declaring this space not a part of the roadbed. Follis v, Accident *101 Ass’n, 62 N. W. Rep. 807; Standard Life & Acc. Ins. Co. v. Langston, 30 S. W. Rep. 427. The judgment is affirmed.
Burgess and Sherwood, JJ., concur.