## Metropolitan Accident Association v. Amanda Taylor.

1. INSURANCE—*Special Exceptions in Accident Policies.*—No reason is perceived why an accident insurance policy may not make a special exception of a class of injuries, however general the description may be, provided only that it distinguishes the one intended from others, and admits of proof to identify a particular case as falling or not falling within it.

2. SAME—*Voluntary Exposure to Unnecessary Danger.*—An accident insurance contract provided that its benefits should not extend to death or disability happening directly or indirectly in consequence of voluntary exposure to any unnecessary danger. The insured sat down on the track of a railroad in active operation and was run over and killed. *Held*, that there were conditions on which his removal in good time might absolutely depend, but which could not be certainly foreseen; that this uncertainty made the position one of danger, and that the insurance company was not liable.

3. SAME—*The Phrase "Walking on the Road-bed of any Railroad" Construed.*—An accident insurance contract excepted from its operation injuries received by the insured while "walking on the road-bed of any railroad." *Held*, that the limitation of this exception to the act of walking in its strictest sense was improper and that it should be construed to include running, using the road bed as a footpath, and even stopping on it in the course of such use with the intention of pursuing the journey thereon when the occasion for such suspension had passed.

Metropolitan Accident Ass'n v. Taylor.

**Assumpsit,** on an insurance policy. Appeal from the Circuit Court of Macon County; the Hon. EDWARD P. VAIL, Judge, presiding. Heard in this court at the May term, 1896. Reversed with finding of facts. Opinion filed June 16, 1897.

SMITH, SHEDD, UNDERWOOD & HALL, attorneys for appellant.

The insured died from voluntary exposure to unnecessary danger, and, therefore, can not recover. Chicago & A. R. R. Co. v. Logue, 158 Ill. 626; Tuttle v. Travelers' Ins. Co., 134 Mass. 175; Sawtelle v. Railway Passengers' Assurance Co., 15 Blatchford, 216; Standard Ins. Co. v. Langston, 60 Ark. 381 (30 S. W. Rep. 427); Follis v. United States Mutual Accident Ass'n (Iowa), 62 N. W. Rep. 807; Smith v. Preferred Mut. Acc. Ass'n, 62 N. W. Rep. 990; Cornish v. Accident Ins. Co., 23 Law Reports, Q. B. Division, 453.

The insured died, while, and in consequence of walking on the road-bed of a railway, and, therefore, can not recover. Burkhard v. Travelers' Ins. Co., 102 Pa. St. 262; Piper v. Mercantile Mutual Acc. Ass'n, 37 N. E. Rep. 759; Keene v. New England Mut. Acc. Ass'n, 41 N. E. Rep. 203.

DUNDAS & O'HAIR and SYDNEY A. EADS, attorneys for appellee.

MR. JUSTICE PLEASANTS DELIVERED THE OPINION OF THE COURT.

Appellant is a mutual benefit association, organized under the act of July 18, 1883. On the 9th of January, 1894, it issued its certificate of membership to Homer R. Taylor, of Brockton, Illinois, who is alleged to have been killed by an engine of the C. & N. W. R. R. Co., near the city of Clinton, Iowa, on the 5th of August, 1894. Appellee, his mother, named in said certificate as beneficiary in case of his death, brought this action thereon, which was tried by the court without a jury, and resulted in a finding and judgment in her favor for $1,053.33; from which judgment on exceptions duly taken, this appeal is prosecuted.

The case was submitted on a stipulation, together with

depositions of the engineer and coroner, showing the facts to be as follows:

About seven o'clock in the morning of the day mentioned, deceased, with two companions, started from Clinton to go to the next town, walking upon the railroad track, and so continued for about three miles, when his companions left him upon the track to go to a farm house about an eighth of a mile distant, for something to eat. He declined to go with them, but said he would wait for them, and the intention was, upon their return, to prosecute their journey together. He then appeared to be in good health. They left him at about the place where a few minutes afterward he was struck by the locomotive and found dead. He was not again seen until discovered by the engineer on the train coming from the west with a speed of forty or more miles per hour.

The place of the accident was on the main line of the Iowa Division, between Clinton and Council Bluffs, over which, double tracked, thirteen regular trains each way passed every day, and often as many extras, all of those going east running on one track and of those going west on the other, unless through special orders. For a mile each way from that place the tracks are straight, with nothing on or very near the right of way to obstruct the view for that distance in either direction. It was fenced on both sides, the nearest opening being a highway crossing five or six hundred feet distant.

On the occasion in question the approaching train was on the north track. When about three-quarters of a mile away, the engineer first observed something on the track ahead, but until he was within four hundred feet of it, he did not know it was a man. Taylor was then sitting on the north rail and facing southeast—not directly across the track, but with his back partially turned in the direction from which all trains on that track approached—his legs stretched out, his arms on his knees and his head hanging down between his legs. The engineer did not notice that he looked toward the engine or raised his head, or moved in any way.

The coroner, a physician of twenty-two years' practice, upon a personal examination within three hours after the accident, found both legs and the back of deceased broken, his skull crushed and bowels exposed, injuries which, being quite sufficient, he very naturally understood to have caused his death, and that "his system and person were entirely free from intoxicating beverages."

By the terms of the certificate, the application therefor and the by-laws of the association are made a part of it; and the by-laws declare that "the certificate shall provide against all forms of bodily injuries induced by external, violent and accidental means, except as follows:

The benefits under the certificate  *  *  *  shall not extend to  *  *  *  death or disability happening directly or indirectly in consequence of disease or bodily infirmity, *  *  *  or by voluntary exposure to any unnecessary danger  *  *  *

The following hazards are risks not contemplated or covered by this insurance, and no sum whatever shall be paid for any injury received while thus exposed or in consequence of such exposure, to wit: walking on the road-bed or bridge of any railroad," and others specified.

The technical points against the judgment, based on provisions of the certificate, and by-laws relating to notice and proofs of injury, surgeon's certificate, and time of bringing suit, were so well answered that we think it unimportant to refer to them particularly. Nor do we see any material error of the court as to the law. But we do not concur in the finding of the issues on the evidence. Since it was all in writing the trial judge had no better means of determining its weight than has this court.

The first question arising upon it is whether Taylor's death was due to "external, violent and purely accidental" causes.

Upon the assumption that he was alive until the engine struck him, the coroner's statement would be a conclusive and affirmative answer. And that assumption on his part was entirely natural. But was it warranted? His examina-

tion of the body was made within three hours after the accident, and it does not appear, nor is it to be presumed, that either at any time before, or when his deposition was taken, he had any knowledge or information of the facts testified to by the engineer, who doubtless went on with his train. How are these unquestioned facts to be explained? Suicide, of which there is neither claim, proof nor legal presumption, is out of the question. Was he asleep? He was a young man, apparently in good health—according to his application—by occupation a farm hand and tile ditcher, and handled, in business, agricultural implements and horses. Such men usually go to bed early and sleep soundly. They are not apt to be drowsy at eight o'clock in the morning of an August day. That he did not go with his companions for food was probably because he had breakfasted at Clinton, and was ready for work until noon. A walk of three miles ought not to have fatigued him or made him drowsy. Had he felt inclined to take a nap while they were gone, would he have chosen a sitting posture on the rail of a track upon which he must have known that trains frequently passed, rather than to lie down in the shade of a fence, when the morning was bright and clear and the grass probably dry? Moreover, had he so strangely chosen, and been drowsing or asleep, it is well nigh certain that he would have been aroused sufficiently to make some visible motion, if not to get off the track, by the noise of the coming train, the vibration of the rail on which he sat, and the whistle blown for the highway crossing five or six hundred feet east of him.

If he was awake, but paralyzed, it would seem to have been a case of paralysis instantly so complete and total as to deprive him of all power of motion in every part—head, trunk and limb; which we apprehend is quite as seldom met with in temperate men of his age and mode of life as apoplexy, or failure or organic affection of the heart, causing sudden death.

In cases of transient fainting or prostration, consciousness is very rarely if ever lost without some warning, and is soon

recovered, with power to move.   How long it was before the engine struck him that Taylor lost it, the evidence furnishes no means of determining.   It appears to have been not less than one minute, for the engineer saw him at a distance of nearly a mile, but it may have been twenty or more—ample time for recovery, from such a fit or spell, of both consciousness and power of motion; and if he had been warned by premonitory sensations he would have gotten off the track.   Nothing whatever was shown respecting his companions after they left him as above stated.

From the circumstances mentioned, and which are all that appear, we are satisfied that to wait for their return he sat down for rest on the only thing about him that was enough above the general surface to make a seat, expecting to see any approaching train or engine for a mile and get out of its way; and from the time, the place, the position of the body and the absence of every appearance of life when, if living, some such would almost certainly have been shown, are inclined to believe that while so sitting and expecting, he suddenly expired from some brain or heart trouble, and was dead when the engineer first saw him, rather than that he remained on the track as so seen, because of any temporary inability to get off.

But if he was killed by the train, appellant claims that the evidence showed his death was the result of his voluntary exposure to that unnecessary danger, and upon that evidence the finding and judgment should have been for the defendant, under the clause quoted from the by-law which excepts every case of death or disability so resulting from all benefits under the policy of insurance.   To which appellee, admitting that the by-laws, so far as valid and operative, constituted a part of the policy or certificate of membership and were binding upon both the parties, answers, first, that the clause referred to was abrogated or waived as to Taylor by what is called the "blanket provision" in the certificate itself, and is as follows:   "It is hereby expressly understood and agreed that the benefits of this

insurance shall not be limited to those accidents occurring in the occupations herein given, but in addition thereto this insurance shall extend to and cover any of those accidental injuries common to all men, not specially excepted; which may occur to the insured while not engaged in his occupation." The point made is that accidents can not be "specially excepted" by so general a description as is given by the by-law. In the argument the proper definition of a "specially excepted injury" is assumed to be "an injury which is excepted either upon account of the special act which caused it, or else upon account of the special nature or character of the injury itself;" and hence it is said that while the by-law would except this case, notwithstanding any proof that the death was induced by external, violent and accidental means, if it resulted from such voluntary exposure to the danger, the blanket provision would cover it, notwithstanding such exposure, if it was produced by such means, because it is not "specially excepted," either by the by-law or the certificate of membership; and that in case of such contradiction or inconsistency the certificate must prevail.

We do not accept the proposed definition as correct, nor see any inconsistency between the two provisions. No reason is perceived why there may not be a special exception of a class, however general the description given may be, provided only that it distinguishes the one intended from others, and admits of proof to identify a particular case as falling or not falling within it. The term "specially" was probably here used in the sense of "expressly."

We also find that the unquestioned facts in this case brought Taylor within this special exception. He took, to occupy for an indefinite time, a position that was dangerous in itself—seated on the track of a railroad in active operation, on which many trains, regular and extra, passed every day. The danger was that he might be struck by one of them. He did not expect that danger to overtake him. Those who expose themselves seldom do, and for that reason so expose themselves. But he did not know when the first

to pass would come.   He did know that if it should pass while he so remained it would strike him.   He could not know that nothing would happen in the meantime to suspend his power or prevent him from using it in time to get off the track, or that any one else would be at hand to assist or remove him.   These were conditions on which his removal in good time might absolutely depend, but which could not be certainly foreseen; and this uncertainty made the position actually taken one of danger.

However few and remote the chances against him may have appeared to be, he knew they might be more and nearer than appeared, and should be charged with taking them all as they proved to be.   That other and intervening causes—whether the negligence of a third person, an inevitable accident, or an inanimate thing—were required to bring about the unfortunate result can not relieve him from responsibility for his own negligent exposure, without which they could have had no operation to produce it. That exposure, placing him in danger of their occurrence and effect, must be regarded as a proximate cause of the injury.   Village of Carterville v. Cook, 129 Ill. 152; Pullman Palace Car Co. v. Laack, 143 Id. 261.

. That this danger was "unnecessary" in his case, is too obvious to require argument.

The efficient and essential contributory part he took in exposing himself to it was voluntary.   When he was able, physically, to sit down on the rail and stretch out his legs, he must have been able to step over it and so put himself out of danger from a passing train.   When his companions left the track to get a breakfast he refused to accompany them, though apparently in good health, and said he would wait there for them.   There could have been no clearer manifestation of his will and preference to stay where he was until their return—on the track.

It is said that his death was not due to his being voluntarily there so long as he had any volition, but to his remaining on it after he lost his volition.   The question here, however, is not as to his volition with reference to

the actual occurrence of the injury, but to his exposure to it. Had an action been brought by an administratrix against the railroad company upon the facts here shown and clear proof of negligence (not gross) on the part of the engineer, would not the court hold it to be a case of contributory negligence on the part of the deceased in voluntarily taking the position he did, and that his loss of volition while in it was immaterial? We can not disconnect the " being" from the " remaining " on the track as the cause of death, although the remaining was involuntary in this case. The suggestion of such a disconnection treats it as if Taylor, being in a safe place, had lost his volition and in that condition gone upon the track—which is radically different.

Much that has been said applies with equal force to the question whether the injury was received " while or in consequence of his exposure in walking on the road-bed of the railroad." We dissent from the limitation of this exception to the condition or act of " walking," in its strictest sense, and think it includes running, using the road-bed as and for a footpath, and even stopping on it in the course of such use—as to tie a shoe, talk with another, or rest for a time, standing or sitting, but intending to pursue the journey thereon when the occasion for such suspension is passed.

Perceiving no preponderance of evidence against the conclusions above indicated, we find that the death of the deceased was in consequence of bodily disease or infirmity, or was due to his voluntary exposure to unnecessary danger, and while or in consequence of walking on the road-bed of the Chicago & Northwestern Railroad.

Wherefore the judgment of the Circuit Court will be reversed, and the clerk will recite in the record of this judgment the facts found as above stated. Judgment reversed.

### SPECIAL FINDING OF FACTS TO BE INCORPORATED IN THE JUDGMENT OF REVERSAL.

Upon consideration of the evidence contained in the record herein this court finds the deceased, Homer E. Taylor,

came to his death in consequence of bodily disease or infirmity or by reason of his voluntary exposure to unnecessary danger.

Wherefore the judgment of the Circuit Court herein is reversed.