A. J. McClure, Appellee, v. Great Western Accident Association, Appellant.

**Accident insurance:** limitation of liability while on the road-bed of a railroad.  One walking between the double tracks of a railroad used for running trains in opposite directions, the rails of which were ten feet apart and the distance between passing

engines four feet, is within the provisions of an accident policy limiting liability where the injury is received while assured is on the roadbed of any railroad company, except while crossing at a public highway.

*Appeal from Lucas District Court.*— Hon. M. A. Roberts, Judge.

Thursday, February 7, 1907.

Action at law to recover upon an accident insurance policy. The trial was to a jury, and resulted in a verdict and judgment for plaintiff. The defendant appeals.— *Reversed.*

*Bailey & Stipp,* for appellant.

*Will B. Barger,* for appellee.

Bishop, J.— The defendant, as its name implies, is a corporation doing an accident insurance business. The plaintiff, a real estate broker and a policy holder in said association, met with an accident in June, 1904, resulting in a total permanent disability. He made claim for the sum of $1,250, the full sum provided in the policy to be paid in case of total disability; and, payment being refused, he brought this action to recover.

Several defenses are pleaded, but the one upon which reliance is principally placed is based on a provision of the policy, in substance, that the injuries insured against shall not include those received while the assured is on the roadbed of any railroad company, except while crossing at a public highway, but that in such case the liability of the association shall not exceed $125 for total disability. The court refused requests for instructions presented by defendant limiting the right of recovery on the policy to the sum of $125, and submitted the question to the jury as to whether at the time of the accident plaintiff was on the roadbed of a railroad

company. Appellant contends that here was error, and in view of the record we think the contention must be sustained. In his petition plaintiff states the circumstances of his accident to be that while on his way to the railroad depot in Chariton, this State, he was overtaken by a railway train, and was struck by the pilot of the engine drawing such train and thus injured. The written notice of accident given by plaintiff to the defendant association, and the proofs of loss or injury made by him as required by the terms of the policy, were attached to the petition by copy, and made a part thereof, and were also introduced by plaintiff in evidence. In each thereof it is stated in explicit terms that plaintiff was injured while walking on a railroad track, and by being struck in the back by a locomotive engine. As a witness, plaintiff testified that he started for the depot to mail some letters. "I went along the street past the Bates House, and then north along the path on the railroad right of way. I was in a hurry, and took that way as I had often done. I left the sidewalk and took the path between the tracks, and after I had gone some distance I saw a fast freight train coming down the track from the north. There was a cloud of dust and smoke and steam, and I remember an effort to get away from it, and everything then was a blank." Other witnesses testified that at the place of the accident the railroad is double tracked, and that the distance between the tracks was about ten feet; that such intervening space was ballasted to correspond with the tracks, and covered with cinders. Whether there were eye-witnesses to the accident does not appear, but it would seem certain that as plaintiff stepped away from the track on which the freight train was approaching he was struck in the back by an engine approaching from the south on the other track. Indeed, such is the fact theory of counsel for appellee as presented in argument.

Taking this to be the situation, was plaintiff on the roadbed of a railroad company within the meaning of that expression as contained in the policy? At first blush it

would seem conclusively certain that he was, because otherwise he could not have been struck by the engine moving along on and over the rails composing the railroad track. But counsel for appellee does not admit of soundness in this view. It is his contention that upon the facts proven it was an open question as to the position of plaintiff at the time he was struck; that conforming the meaning of the term " road-bed," as defined in law, and this counsel interprets to be that portion of the roadway included within the lines marked by the ends of the ties, usually a distance of one foot outside each rail, the jury may well have found as matter of fact his position to be outside of the limits of the roadbed, although not so far removed as to be beyond reach of a passing train. This contention we shall consider in the spirit of seriousness with which it is made, because, if sound in law, it must be said that the case was properly submitted to the jury, and, accordingly, the judgment should not be disturbed. We quite agree that the term " roadbed " does not of necessity include the entire right of way. From the standpoint of engineering it is the bed or foundation on which the superstructure of ties and rails is made to rest. This is the definition common to all the authorities. Webster's Inter. Dictionary; Century Dictionary; 7 Words & Phrases, 6255. If, now, the superstructure be placed upon the natural surface of the ground, or perhaps at the bottom of a cut, it would seem reasonable to say that in strictness the roadbed extended no farther outward than the respective lines marked by the ends of the ties. If, on the other hand, the superstructure is placed on a grade, or raised surface, it seems clear that the term must be held to include all portions of the superstructure, from base line to base line, or, at least, so far as designed to serve the purpose in view. This must be so because the term naturally implies a condition not of undisturbed nature, but resulting from the constructive work of human hands guided by a specific purpose. And no reason presents itself to our minds, and there is no authority in the

books as far as we have been able to discover, for saying that only that portion thereof resting between lines carried down perpendicularly from the respective ends of the ties when in place must be given exclusive designation as the roadbed. As ordinarily constructed, the portion of the foundation out-side the lines marked by the superstructure is just as neces-sary to the intended purpose as that portion directly un-derneath. The work is constructed as a whole, and to one end, and must therefore be taken as a whole for the purposes of general definition.

But when all this is said — and perhaps we have given more time to the phase of the subject than necessary — it remains to be said that it is neither necessary or proper to apply the definition of a roadbed in its strict sense to the term as it is used in an accident insurance policy. In such connection " the phrase ' walking or being on a railway bridge or roadbed ' is not to be construed with absolute lit-eralness." *Accident Co. v. Wagley*, 74 Fed. 457 (20 C. C. A. 588). Ordinarily a railroad track does not of itself pre-sent a condition of danger, either hidden or obvious. It be-comes dangerous only in connection with its use in the opera-tion of trains thereover. And from this the conclusion follows, as we think, that the exception found in the policy in suit — an exception common to most accident policies — was in-tended to have force only in the event of an injury connected in its origin with the matter of train operation. Certainly there can be no reason for saying that it was intended to bar a right of recovery if the accident was such in character that it could have been made the basis of a recovery had it occurred elsewhere than on the roadbed of a railroad com-pany. 4 Cooley, Insurance Briefs, 3187, citing *Burkhard v. Insurance Co.,* 102 Pa. 262 (48 Am. Rep. 205) ; *Dougherty v. Insurance Co.,* 154 Pa. 385 (25 Atl. 739). On the con-trary, the purpose of the exception was to prohibit the ex-posure of his person by the assured to the dangers to be apprehended from moving engines or cars. " The condition

is a warranty by the assured that he will not intrude upon that part of the roadbed which is not also a part of the highway or public thoroughfare; that he will not loiter upon the track, but does not obligate him not to cross the railroad bed at the place provided for the public to cross it." Joyce Insurance, section 2625; *Payne v. Association,* 119 Iowa, 342. As aptly said in *Association v. Taylor,* 71 Ill. App. 132: " The exception is intended especially to guard against the evil of what is known as ' track walking,' which is necessarily very dangerous." And from this it follows as matter of course that, if an assured shall voluntarily and unnecessarily put himself in the prohibited position, he must be held to have assumed the risk.

Now, as constructed, an embankment forming a roadbed may in fact extend to the limits of the right of way, or it may happen that the ties and rails are laid at the bottom of a cut or on the natural surface of the ground simply made smooth for that purpose. Accepting of the purpose and intention of the policy exception as concluded foregoing, there could be no reason for extending the operation thereof to include all that portion of the constructed bed which is so far removed from the tracks as to preclude danger from a passing train. Thus, in *Standard, etc., Co. v. Langston,* 60 Ark. 381 (30 S. W. 427), it was held that an exception similar in wording to that found in the policy before us could not be construed " to include in its meaning the ends of the ties of unusual and extraordinary length, and extending to a place where there can be no possible collision with trains, and where persons standing or sitting would be beyond the reach of injury from passing trains." So, in the case of track laid in a cut or in the natural surface, we think it would be not only out of reason, but absurd, to say that the exception cannot be given application if it shall be made to appear that the assured was standing or walking outside the line marked by the ends of the ties, but not far enough distant to escape injury from a passing train. It

does not seem necessary to fortify this position by an extended
citation of authorities.    But see *De Loy v. Insurance Co.,*
32 Atl. 1108 (50 Am. St. Rep. 787).  There the policy in
suit prohibited the assured from " standing or being upon
a railroad track or bed of a railroad."   The trial court had
instructed the jury in substance that such policy provision
was intended to prohibit the assured from standing or walk-
ing upon a railroad track or so near thereto that he would
be likely to be hit by trains passing or repassing upon the
railroad; that this would be the construction put upon the
language of the policy by the public generally, and the
company had the right to expect that the assured would so
understand it.   On the appeal it was insisted that here was
error, but the contention was brushed aside, and the doctrine
of the instruction given unqualified approval.   Our view
thus taken is not in conflict with Payne v. Association, *supra,*
as counsel for appellee seems to think.   There the accident
occurred while the assured was crossing the railroad tracks,
following a well-beaten way that had long been used by the
general public.   And we held such was a public crossing
within the meaning of the policy, and that it was not incum-
bent on the assured to ascertain by investigation whether such
way had been regularly laid out by the public authorities or
dedicated to public use.   Quite different from this is the
case of one who is injured while walking longitudinally along
a railroad track.   And in such case it can make no difference
how frequently the assured had so walked the track before,
or how many other persons had in like manner exposed them-
selves to danger.   The track is none the less the roadbed of
a railroad company.   *Weinschenk v. Insurance Co.,* 183
Mass. 312 (67 N. E. 242).

Now, whether appellee was on a roadbed, in the sense
of that expression as used in the policy, was, of course, a
question of fact for the jury to decide if there was any room
for doubt about it.   In our view the situation as disclosed
by the record left no room for doubt.   It will be remembered

that here were double tracks, each used for through traffic by trains running in opposite directions, and situated ten feet distant from each other. It was shown in evidence that the cylinders of a locomotive engine extend outward three feet over the rail. It thus appears that there was seven feet of space between the engine on the track and the rail of the other track, and as trains passed each other there was but four feet of space left to be occupied by a man's body. Surely no reasonably prudent man would hazard his life by standing or walking between the tracks while a swiftly moving train, with its accompaniment of noise, dust, smoke, escaping steam, and suction of air, was passing by. Much less would he undertake to stand on the space intervening between passing trains, swiftly moving in opposite directions, and, at best, within a few inches of his body. Should one attempt to do so and escape alive, the incident might well be written down as a miracle. Regardless, then, of the character of construction, the ground between the tracks must be said to have been part of the roadbed of a railroad within the meaning of the policy. It was a place of great danger, and of almost certain injury from passing trains to one who should persist in walking thereon. No better illustration of this could be had than plaintiff's own case. He appreciated the danger of too close proximity to the freight train he was facing, and in seeking to avoid it he incurred the danger from the passenger train approaching him from behind. At least he was on the roadbed when he was struck, and, as we have seen, it can make no difference whether at the time he was within one foot or three feet from the track rail.

Counsel for appellee cite our attention to the case of *Meadows v. Insurance Co.,* 129 Mo. 76 (31 S. W. 578, 50 Am. St. Rep. 427), as announcing doctrine to the contrary. And in a sense this would appear to be so. We cannot undertake to review the opinion in detail. Suffice it to say that there the assured was killed in the accident. When found, the lower limbs were lying between the main track rails,

while  the trunk of the body was outside the south rail. Between the main track and a side track to the south was an intervening space of ten feet, and this had been cindered and made smooth to walk on.  How the deceased came to be at the place, or what were the circumstances of his accident could not be made to appear, as it was night time and there were no eye-witnesses.  The action was defended on the grounds that the deceased had voluntarily exposed himself to an obvious danger, and was on the roadbed of a railway, all contrary to the provisions of the policy sued upon.  A demurrer to the evidence had been overruled by the trial court, and the correctness of this ruling, the opinion says, presented the decisive question in the case.  And, after considering the doctrine of presumptions the court proceeds to say: " It follows that by invoking these presumptions plaintiff not only established a death by violence, but that his intestate was in the exercise of ordinary care and prudence when he met his death, and that it was caused by accident. Nor is this presumption rebutted by the unexplained fact that his body was found mangled upon a railroad track. There were many purposes for which he might lawfully go upon or across the railroad track." The opinion makes it appear that the trial court in instructing the jury took occasion to say that the intervening space between the main and passing tracks was not a part of the roadbed of the railroad within the meaning of the policy exception.  This instruction was upheld; the court saying:  " It would be most unreasonable to hold that merely because this space was a portion of the right of way one seeking passage on the trains of the company, or called there on business, to meet a relative or friend on business or in the discharge of a social duty, should be charged with want of care for his welfare.  There was ample space, upon a well-worn and smoothly trodden path, and the court committed no error in declaring this space not a part of the roadbed." Assuming that plaintiff's intestate had been walking on the space,

and was there when struck, and addressed to the claim made by the defendant that he had voluntarily and unnecessarily placed himself in the place of obvious danger — a subject-matter evidently uppermost in the minds of the court — the argument of the opinion might have some force. Addressed to the subject-matter really in hand it is wholly without force. It is fair to conclude that the court did not consider the subject in all its bearings, and this is made more evident by the fact that the holding is sought to be supported by the cases of *Follis v. Association,* 94 Iowa, 435, and Insurance Co. v. Langston, *supra.* In the former case the subject-matter was not involved, while the latter case, as we have seen, is an authority to the contrary.

Accepting of the case at bar, as made, it is our conclusion that the trial court erred in refusing the request for instructions, and the judgment must be, and it is, *reversed.*